### LAMB et al. v. ULRICH, Receiver.

No. 14342—Opinion Filed Dec. 26, 1923.

1. Banks and Banking—Insolvency of National Bank—Invalidity of Transactions—Statute.

The law applicable to the instant case is section 5242 of the Revised Statutes of the United States, which is as follows:

"All transfers of the notes, bonds, bills of exchange, or other evidence of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter or with a view to the preference of one creditor to another, except in payments of its circulating notes, shall be utterly null and void."

2. Appeal and Error—Sufficiency of Petition—Amendments.

The court may, before or after judgment in furtherance of justice, allow the petition to be amended to conform to the facts proved, and the judgment of the trial court will not be reversed because of defects or omissions in the petition, when such defects or omissions are supplied by the proof. Held, that any defects or omissions in the petition in the instant case are supplied by the proof.

3. Banks and Banking—"In Contemplation of Insolvency."

A bank or a business concern may be considered to be acting in contemplation of insolvency when, in making some disposition of its assets, it is actuated by its knowledge of its insolvency.

**4. Same—Payment to Bank's Creditor as Preference.**

The intent to give a preference is presumed when a payment is made to a creditor by a bank whose officers know of its insolvency, and, therefore, that it cannot pay all of its creditors in full.

**5. Trial—Demurrer to Evidence—Effect.**

The test applied to a demurrer to the evidence is that all the facts, which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant.

**6. Trial—Verdict — Inconsistent Finding—Judgment.**

The statute law of this state, section 553, Comp. Stat. 1921, is:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter and the court may give judgment accordingly."

**7. Same—Submission of Special Questions to Jury.**

Where special questions are submitted to the jury, it is error for the court, after conclusion of the arguments, to charge the jury to make their special findings conform to their general verdict. The sole duty of the jury with reference to such questions is to answer them truthfully. Held, it was clearly erroneous for the court to require the jury to make their answers to the particular questions of fact harmonize with the general verdict, or to suggest that the findings should be consistent each with the other. Each of the questions propounded should be answered truthfully, in accordance with the preponderance of evidence upon the question submitted.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Action by Bernard Ulrich, receiver for the State National Bank of Ardmore, Okla., against J. A. Lamb, C. E. Murphy, and A. B. Murphy. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

R. L. Disney, for plaintiffs in error.

Johnson & McGill, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Carter county, Okla., by Bernard Ulrich, receiver for the State National Bank of Ardmore, Okla., defendant in error, plaintiff below, against J. A. Lamb, C. E. Murphy, and A. B. Murphy, plaintiffs in error, defendants below, for recovery of notes and securities, claimed by him as receiver for the bank in the sum of $10,008.95.

The parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The petition alleges, in substance, that the plaintiff was receiver for the State National Bank of Ardmore, which was declared insolvent by the Comptroller of Currency on February 25, 1922; that on February 23, 1922, the defendants had, among their depositors in said bank, the sum of $10,008.95; that defendants J. A. Lamb and C. E. Murphy were stockholders in said bank; that on the 23rd day of February, 1922, defendant J. A. Lamb procured the transfer to him and his codefendants of notes and securities of said bank to the amount of $10,008.95 in the form of a note for $4,000, due on demand, with accrued interest of $105, and a note for $1,500, and other securities, mostly county warrants, amounting to $4,403.95, and that said defendant J. A. Lamb gave checks to the bank on various deposit accounts of himself and his codefendants and attached five checks as exhibits to the petition; that the defendants, as shareholders in said bank, well knew the insolvent condition of said bank, and that they conspired together to secure the above mentioned securities with a view of having themselves preferred over other creditors and to prevent the application of the assets of the bank in the manner prescribed by law, as said securities were delivered to defendant J. A. Lamb to be apportioned by him among the defendants; that it was not the custom and practice of banking institutions that are in good condition to transfer to their depositors notes and other securities in lieu of their deposits, and that it is illegal for a bank to prefer one creditor to another: that said transaction was null and void, and that the plaintiff was entitled to the possession of said notes, warrants, bonds, and securities, and had made demand therefor and had been refused; and prayed for judgment against the defendants for the return of said notes, warrants, bonds, and securities, and that in the event return of same could not be had that he have judgment against the defendants for their value, together with interest and all damages suffered by reason of the wrongful detention of said securities, and costs.

To the petition of plaintiff the defendants filed their general demurrer, which was overruled and exceptions taken, and defendants filed as their answer a general denial.

Upon these issues the case was tried to a jury, which trial resulted in a general

verdict in favor of the plaintiff for the return of the property, or its value, and signed by ten of the jurors, and the jury also returned a special verdict to interrogatories propounded, as follows:

"First. Did J. W. Richardson as cashier of the State National Bank assign the notes and warrants in issue in this case to the defendants with a view to preferring the defendants over the other creditors of the bank?

"Answer: Yes.

"Second. Did J. W. Richardson as cashier of the State National Bank transfer the notes and warrants in issue in this case to the defendants in contemplation of insolvency?

"Answer: Yes"

—which was also signed by ten of the jurors.

Motion for new trial was filed, heard, and overruled; exceptions reserved and judgment was entered upon the verdict of the jury, in favor of the plaintiff and against the defendants, for the return of the property, or its value, from which judgment of the court defendants appeal.

Nine specifications of error are set up by attorney for defendants in his brief, but the same are argued under seven general heads, which are as follows:

"First Assignment of Error. The court erred in overruling the motion of the plaintiffs in error for a new trial.

"Second Assignment of Error. The court erred in overruling the demurrer to the petition.

"Third Assignment of Error. The court erred in admitting evidence on the part of the defendant in error over the exceptions of the plaintiffs in error.

"Fifth and Seventh Assignments of Error. The court erred in overruling the motion of plaintiffs in error that the jury be directed to return a verdict in favor of the plaintiffs in error. Also, said court erred in overruling the demurrer of the plaintiffs in error to the evidence adduced on the part of the defendant in error.

"Sixth and Eighth Assignment of Error. Said court erred in instructing the jury that their answer to the interrogatories propounded by the plaintiffs in error and submitted to the jury must necessarily be consistent with the verdict of the jury; and in prejudicing the jury by showing them by his query to counsel for defendants in error, whether they insisted on answer to interrogatories propounded, that it was the plaintiffs in error who propounded and insisted on answer to said interrogatories; whereas, the jury should have been uninformed as to which side of said controversy

insisted on said answer to said interrogatories.

"Tenth Assignment of Error. Said court erred in refusing to give the following instructions requested by the plaintiffs in error, to the jury, to wit: (setting up several requested instructions refused by the court).

"Tenth Assignment of Error. Said court erred in giving the following instructions to the jury over the objections and exceptions of the defendant, to wit:" (Setting up several instructions given by the court).

Counsel for defendants very properly contend that the true standard by which the sufficiency of the petition should be measured is section 5242 of the Revised Statutes of the United States, which is as follows:

"When Transfers Void. All transfers of the notes, bonds, bills of exchange or other evidence of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void. * ** (R. S. 5242: Acts June 3, 1864, c. 106, 52, 13 Stat. 115; March 3, 1873, c. 269, 2 17 Stat. 603)."

The state statute does not apply. If counsel for defendants had stood upon the demurrer without filing answer and going to trial and taking evidence in this case on a strict construction of this statute it is a very serious question in our opinion but what he would have been entitled to prevail, but, as in this case, when the demurrer was overruled and the defendants filed answer and proceeded to take testimony, a different rule prevails in this jurisdiction and any defect in the petition may be supplied by the proof in the case and the petition will be considered by the court as amended to conform to the facts proven, and the petition may be considered amended in the appellate court to support the judgment of the trial court, if necessary, or the amendment will be deemed to have been made and the judgment of the trial court will not be reversed because of defects or omissions in the petition when such defects or omissions are supplied by the proof. Gearhardt et al. v. Moulder, 85 Okla. 200, 205 Pac. 141; St. Paul Fire & Marine Ins. Co. v. Mittendorf et al., 24 Okla. 651, 104 Pac. 354; Bettie Mason et al. v. D. M.

Slonecker, 92 Okla. 227, 219 Pac. 357, and the cases therein cited.

Applying this well-settled rule to the instant case, it will be necessary to examine the testimony to see whether such legal testimony was introduced to cure the defects in the petition, complained of by attorney for defendants.

The evidence conclusively shows that the liabilities of the State National Bank of Ardmore, Okla., were $1,004,000, and that it owed debts to the amount of $300,000, making the total liabilities of the bank $1,304,000 at the time of the transaction complained of in this action; that it had been on the special list for examination by the bank examiners for over a period of one year before this transaction; that it had eighty or a hundred thousand dollars' worth of "bad paper", which it had not been able to make good; that the president of the bank owed it twenty or thirty thousand dollars, unsecured, and that a Mr. Wallace, its former cashier, who had just been retired from this position, owed the bank, individually and as indorser, about $70,000, unsecured, and that J. S. Mullen owed the bank $20,000, directly, and $40,000 indirectly; that E. Dunlap owed $25,000 directly, and it is not ascertainable how much as indorser; that the bank examiner was making frequent visits and making inquiry as to whether this paper was being taken care of; and that they were having fequent meetings of the board of directors, and they all realized that the bank was in a critical condition, and had so realized it for about a year; that they were making overtures to other banks to take over their bank, which fact was known to defendant Lamb, and that on February 23, 1922, the date of this transaction, the bank was not able to meet its liabilities, as testified to by its cashier; that it did not have sufficient money in its reserve fund; that it was having serious trouble each day to raise sufficient cash to take care of its remittances; that it had been going from bad to worse for over a period of six months; but that it had been able to meet its obligations, or to make satisfactory arrangements about its circulating paper, up to the time of this transaction; that the defendants J. A. Lamb and C. E. Murphy, who were stockholders of the bank, together with their codefendant, had on deposit in the bank in several different cash deposits something over $12,000, and that on the day of this transaction the defendant Lamb came into the bank and asked to have these securities transferred to him for the benefit of himself and codefendant; that he demanded paper, bearing interest at the rate of eight or ten per cent., in the sum of $10,000;

that one of the notes, referred to as the Union Three Drilling Company note, was a demand note for $4,000, with accrued interest of $105, and the J. M. Jones note for $1,500, and he took the balance in warrants and securities, mostly of county warrants, drawing only six per cent. interest, and he stated in his testimony that he knew at the time the banks were having a hard time and he wanted to put his money in something he could get his money out of in case he wanted it; that the bank, by this transaction, reduced its deposits and lost the good securities in the sum of $10,008.95. That said transaction was an unusual transaction, the cashier testifying that it was unusual for banks to sell their notes and securities to individuals, and that this was the first transaction of the kind with the defendant J. A. Lamb, who was an oil well drilling contractor, and yet he made no inquiry for the reason therefor, and that he had never known of but one note being sold to an individual before this sale to defendant, and that these two transactions were the only ones that he had ever known of this kind in 16 years' banking experience; that this transaction took place about noon of the 23rd day of February, 1922, and the bank remained open the next day, being February 24, 1922, and by order of the board of directors, agreed upon the night of the 24th, failed to open on the morning of the 25th, and up to the 12th day of October, 1922, the date of the trial of this case, no depositor had been paid anything by the receiver of the bank. The cashier of the bank, who turned over the securities, and the defendant J. A. Lamb both testified that in all of the accounts of the defendants there was remaining a balance after this transaction of something over $2,000, which was in the bank at the time it failed to open.

The cashier of the bank and the defendant J. A. Lamb both testified that this transaction was not made in contemplation of insolvency nor with a view to give preference to those defendants over other creditors of the bank, and the cashier testified that he did not expect the bank to close at the time of this transaction.

Under the statute of this state, the debtor would have a right to prefer a creditor in good faith to secure a valid debt, and but for the United States statute, heretofore referred to, the transfers in this action would, unquestionably, have been good, and we agree with counsel for defendants that the question of the solvency or insolvency of the bank is not the standard by which to measure the rights of the parties to this action, but this case was tried upon

the theory that the act of the parties was made in contemplation of insolvency and for the purpose of preferring the defendants over the other creditors of the bank.

Attorney for defendants complains that the evidence of the condition of the bank was not admissible in this action. With this contention we cannot agree for the reason that all of the facts and circumstances surrounding this transaction, including the condition of the bank, including all the actions of the officers of the bank, and the knowledge that they necessarily had, as to the condition of the bank, were proper matters of inquiry to show what circumstances controlled the actions of the parties and the probable cause and purposes of the transaction. It is not contended, as gathered from the record in this case, by any party to this transaction that this transfer was made after the commission of an act of insolvency, but it is contended that it was in contemplation thereof, and it is contended that it was made for the purpose of preferring the defendants, as creditors of the bank, over other creditors, and we agree with counsel that it was not the financial condition of the bank that is decisive here, but the financial condition of the bank and all the circumstances surrounding it are very potent to show the conditions under which the parties acted in this deal, and we are of the opinion that the evidence was admissible for this purpose, and this purpose only, and that the facts proven, together with all the surrounding circumstances deducible and inferentially to be drawn from these facts and circumstances, were sufficient, under the rules of this court, to cure any defects in the petition, and that the demurrer to the petition cannot be sustained, and that all the facts and circumstances proven in this case, in our opinion, were properly admitted and showed such a condition of facts and circumstances surrounding this deal to entitle the court to overrule the motion of defendants to direct a verdict in favor of the defendants.

In the case of Hayden v. Chemical National Bank, 84 Fed. 874, cited by counsel for both parties in their briefs, it is held:

"A bank or a business concern may be considered to be acting in contemplation of insolvency when, in making some disposition of its assets, it is actuated by its knowledge of its insolvency."

In the case of Roberts v. Hill, 24 Fed. 571, it is held:

"The intent to give a preference is presumed when a payment is made to a creditor by a bank whose officers know of its insolvency, and, therefore, that it cannot pay all of its creditors in full."

This court has repeatedly held as a settled rule of law that:

"The test applied to a demurrer to the evidence is that all the facts, which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant." Rose v. Woldert Grocery Co., 54 Okla. 566, 154 Pac. 531; Anderson v. Pickens, 91 Okla. 91, 216 Pac. 100.

Measured by the authorities above quoted, it is our opinion that the lower court did not err under the first, second, fifth, and seventh assignments of error, presented and argued in brief of counsel for defendants.

Under the sixth and eighth assignments of error the attorney for defendants complains that the court erred in instructing the jury that its answer to the special interrogatories propounded must necessarily be consistent with the verdict of the jury, and the jury was prejudiced by the court bringing to its attention that the interrogatories were propounded by attorneys for defendants. This presents, in our opinion, the most serious proposition in this case, and, while the other propositions, heretofore determined, are very close questions when you apply the "cold steel of the law" by strict construction to the pleadings and evidence in this case, the question here presented is one of invasion by the court of the rights and province of the jury. Under our statute, if the special finding of facts is inconsistent with the general verdict of the jury, the special finding controls and the court may give judgment accordingly, and the jury in this case evidently was attempting to evade the duty imposed upon it to answer the special interrogatories, and the record clearly discloses that there was a diversity of opinion upon these questions as well as upon the general verdict.

If the courts have a right to instruct juries that their answers as to special findings of fact must be consistent with their general verdicts, then the statute law of this state would be rendered nugatory, and would be useless for the purposes for which it was enacted. In the instant case the jury returned into court for additional information before any verdict was returned and asked if it could return a verdict and eliminate the interrogatories, and the court informed the jury that it could not and asked the attorney for defendants if he insisted on an answer, and the court further told the jurors that if they reached

a verdict they should not have any trouble in answering the questions, and the jurors further answered that they were having trouble over the questions and asked the court, "Do our answers to the questions have to be consistent with the verdict?" and the court answered, "They must necessarily be," which action of the court was objected to and excepted to by the defendants, and this question comes squarely upon this appeal for decision.

Section 553, Comp. Stat. 1921, which reads as follows:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter and the court may give judgment accordingly"

—was adopted bodily from the Kansas statute, and the Supreme Court of the state of Kansas, in construing this statute upon the question of instruction of the court to the jury, in the case of Kilpatrick-Kock Dry Goods Co. v. Kahn Bros. et al., 53 Kan. 274, in the third paragraph of the syllabus, held:

"Where special questions are submitted to the jury, it is error for the court, after conclusion of the arguments, to charge the jury to make their special findings conform to their general verdict. The sole duty of the jury with reference to such questions is to answer them truthfully."

And, again, the Supreme Court of Kansas, upon the same proposition, in the case of Coffeyville Vitrified Brick Company v. Eli K. Zimmerman et al., 61 Kan. 750, held:

"It was clearly erroneous for the court to require the jury to make their answers to the particular questions of fact harmonize with the general verdict, or to suggest that the findings should be consistent each with the other. Each of the questions propounded should be answered truthfully, in accordance with the preponderance of evidence upon the question submitted. Under our statute when the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly. The questions should be answered without any reference to their effect on the general verdict." (Dry Goods Co. v. Kahn, 53 Kan. 274, 36 Pac. 327.)

Which opinion, supra, reaffirms the Kansas case heretofore cited.

The Supreme Court of the state of Ohio, in the case of Walsh v. Thomas' Sons, 110 N. E. 454, held:

"Upon submission by the court of a request for a special finding upon a particular question of fact under section 11463, General Code, it is error for the court to explain to the jury the legal effect of the answer thereto, or to give any instruction, explanation or suggestion that seeks to harmonize the answer with the general verdict or with other special findings submitted for determination."

In the body of the opinion the court states:

"It was an evident effort on the part of the court to effect consistency between the answer and the general verdict; section 11464, General Code, provides, 'When a special finding of facts is inconsistent with the general verdict the former shall control the latter, and the court may give judgment accordingly.' The purpose and spirit of this section of the statute were contravened in the effort of the court to harmonize the special findings of the jury with the general verdict. The purpose of the section was to give either party in the case the right to demand, uninfluenced by the action of the court, an answer upon a controlling issue without regard to the general verdict. It frequently happens in the trial of a case that the controlling issue of a fact thus specially found by the jury may be inconsistent with the general verdict; and to interfere with the province of the jury in this respect, by instruction, explanation, comment or suggestion, that would seek to harmonize the answers with the general verdict or with other special findings submitted to them for determination, is clearly erroneous and prejudicial."

It is our opinion that this instruction, or direction, of the court to the jury was a clear invasion of the province of the jury to decide for itself whether it should answer these questions in the affirmative or negative, or whether the answers should be consistent or inconsistent with the general verdict, and the court should have told the jury that it should answer the questions truthfully in accordance with the law and the evidence, and it is our opinion that it was reversible error in the trial court to have given the above instruction, or direction, to the jury, and the defendants were virtually deprived of a plain statutory right.

We have examined carefully the instructions requested by defendants and refused by the court, which are complained of under the ninth assignment of error, but we do not find any reversible error in the refusal of the court to give said requested instructions in the light of the general instructions, given in charge to the jury by the court.

Upon an examination of the instructions given by the court, complained of under the tenth assignment of error, we are of the opinion that all of the rights of the defendants were protected and the instructions given were more than fair to the defendants, and under the rule laid down by the decisions of this court that where the

general instructions given cover the issues in the case and state fairly the theory of each of the contestants in an action and give in charge to the jury the law applicable to the case, this court on appeal will not disturb the judgment of the court for failing to give instructions asked. It is our opinion that the general instructions in the instant case protected the rights of the defendants and that there is no reversible error in the case on account of instructions given or instructions refused.

We are therefore, of the opinion that this case should be reversed solely and only upon the one proposition that the court committed reversible error prejudicial to the rights of the defendants in his directions to the jury that its answers and special verdict in answer to the special interrogatories propounded must be consistent with its general verdict. The judgment of the lower court is, therefore, reversed and remanded with instructions to grant a new trial.

By the Court: It is so ordered.