**TIDAL REFINING CO. v. CHARLES E. KNOX OIL CO.**

No. 16067—Opinion Filed Jan. 12, 1926.

**1. Trial—Demurrer to Evidence—Effect.**

A demurrer to the evidence admits all the facts which the evidence tends to prove in the slightest degree, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence, and upon demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove.

**2. Appeal and Error—Conflicting Evidence —Conclusiveness of Verdict.**

Where the evidence is conflicting, but there is sufficient evidence upon which the jury could reasonably predicate a verdict, and the instructions given by the court are free from error, the Supreme Court will not reverse the judgment on appeal.

**3. New Trial—Death of Trial Judge—Hearing Before Successor.**

Where a cause is tried in a district court in this state, and a motion for a new trial is duly filed, and the trial judge dies before the motion for the new trial is heard and determined, such motion may be heard and determined by the successor of such deceased judge.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by Charles E. Knox Oil Company against the Tidal Refining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

McKeever, Moore & Elam, for plaintiff in error.

Y. P. Broome W. P. McInnis, and J. C. Wilhoit, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendant will be designated herein as they appeared in the trial court. Plaintiff seeks to recover the sum of $452.12 from defendant for balance due on casinghead gas delivered by the plaintiff to the defendant, and alleges defendant agreed to purchase all casinghead gas obtained from wells then drilled or thereafter to be drilled on a certain lease, and to pay therefor the "average current price in the Oklahoma market of raw gasoline of like specifications," during the months of shipment of such raw gasoline. There is no contention over the average current price, it being conceded to be nine cents per 1,000 feet of gas, testing two gallons of gasoline to the 1,000 feet. The contract provided that the defendant would make "accurate and timely tests of said gas with a standard apparatus for making such tests in accordance with the regulation of the United States Department of Interior for the Five Civilized Tribes, tests to be made once every three months," etc. The petition alleges that during the month of March, 1922, plaintiff delivered to defendant 6,075,000 feet of gas of two-gallon gasoline content per 1,000 feet, and in April, 1922, it delivered to defendant 3,246,000 feet of gas of two-gallon gasoline content per 1,000 feet of gas, for which the defendant paid the total sum of $365.16, leaving a balance due of $452.12. That for March and April, 1922, these remittances were made on a basis of 1½ gallons of gasoline per 1,000 feet of gas. That defendant breached its contract by failing to test the gasoline with the standard apparatus as provided by the contract, and that the gas did in fact contain two gallons of gasoline per 1,000 feet. Defendant's answer admits the payments as set forth in the petition, and alleges the amounts so paid constituted a payment in full in accordance with the terms of the contract. The cause was tried to a jury and a verdict rendered for the plaintiff in the sum prayed for, and the defendant appeals and brings this case here for review upon petition in error and case-made.

There was no contention over the number of feet of gas furnished or the average current price for gasoline per gallon, or the

price for casinghead gas containing two gallons of gasoline and for gas containing 1½ gallons of gasoline per 1,000 feet during the months of March and April, 1922, and the only questions for the jury to determine were: (1) Did the gas delivered contain two gallons of raw gasoline per 1,000 feet of gas? and (2) Was the gas tested by the defendant with the standard apparatus as provided in the contract?

At the conclusion of the plaintiff's testimony, defendant demurred for that the evidence wholly failed to sustain the allegations of the petition, and to make out a cause of action against the defendant. The overruling of the demurrer is assigned as error. It has been definitely settled by numerous decisions of this court that a demurrer to the evidence admits all the facts which the evidence tends to prove, and all the inferences and conclusions which may be reasonably and logically drawn from the evidence, and on demurrer to the evidence, the court will not weigh conflicting evidence, but will treat the evidence as if withdrawn which is most favorable to the demurrant. Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785; Western Supply Co. v. Oil Country Drilling Co., 97 Okla. 188, 223 Pac. 399; Lamb v. Ulrich, 94 Okla. 240, 221 Pac. 741; Beggs Oil & Gas Co. v. Deardorf, 97 Okla. 33, 222 Pac. 535; Shawnee Gas & Elec. Co. v. Griffith, 96 Okla. 261, 222 Pac. 235.

It is admitted that if the gas. upon test, showed 1.75, or over, gallons, it should be considered as two-gallon gas. If it tested below 1.75, it should be considered 1½ gallons gas, and paid for accordingly.

Plaintiff's evidence discloses the written contract was entered into in July, 1920, and the witness Charles E. Knox testified that the defendant used an old machine at first, that was not standard, but he made no protest, as at that time they were only obtaining about 6,000 feet of gas, and the revenue was so small it was not worth the trouble of supervising the tests, but after the increased gas development, he protested against the use of the old machine and notified defendant he would not accept tests made with it. In 1921, defendant used a different machine, after Knox's protest, and the tests were satisfactory. That when he heard the defendant had again brought the old machine to test his wells in March and April, 1922, he again notified the defendant it was useless for them to make a test with it, as the test would not be accepted, and Charles E. Knox notified his brother, George Knox, who was drilling on the lease, not to pay any attention to any test made with this machine, and forbade George signing any test sheet.

However, defendant brought the machine on the lease, and George Knox describes the machine as a "condenser on a Ford truck," and the operator would have to jack up the rear wheel and slip a belt on, and the belt would slip off; the pipes were broken, and after three days' trial, the operator requested George to sign the test sheets, which he refused to do, as he had no authority to sign same, and the signature on the test sheets was not his signature. The average of two tests made with the old machine on the Ford truck showed 1.45 gallons of gasoline per 1,000 feet of gas, and the defendant remitted on the basis of 1½ gallons.

It then appears the larger and standard apparatus, mounted on a five-ton White truck, was brought to the lease, and the tests for May and June showed an average of 1.78 and 1.80, or an average of 1.79, which under the contract and the usage of the business is a two-gallon test. It thus appears from the evidence of the plaintiff, that whenever the gas was tested by the standard apparatus on the White truck, it showed a two-gallon test. Plaintiff's witnesses testified that the apparatus on the Ford truck, compared to the standard apparatus on the White truck, was as a baby carriage compared to an automobile, and it was not a standard apparatus.

Under the rule announced herein, and supported by abundant authorities, we are of the opinion that the evidence was good as against demurrer, and the court did not commit error in overruling the same, and we so hold.

Defendant introduced as its witness, Clarence R. Williams, who drove the Ford truck with the protested machine thereon, and who made the tests in March. The witness testified it was a standard machine and that George Knox signed the test sheets. Both Charles E. Knox and George Knox testified the name on the March test sheets was not the signature of George Knox, and it was further in evidence that Williams told George Knox that if he did not sign the test sheets, he, Williams, would sign them and send them in anyhow. It is not denied by defendant that plaintiff protested against the use of the Ford outfit in 1921, and that when it was replaced by the White it showed a two-gallon test. It was not denied that when the White again displaced the Ford in May or June, 1922, the gas again showed a two-gallon test, nor is it denied that Clarence E. Knox notified the defendant that he would not submit to the test made by the apparatus assembled on the Ford truck.

Under the contract it was the duty of the defendant to make the tests with a standard apparatus, and as to the fact that the machine used for the test of March, 1922, under which payments were made for March and April, was a standard apparatus, the evidence was conflicting, and this presented a question of fact exclusively for the jury to determine, and in an action at law, tried to a jury, where the evidence is conflicting, and the question is submitted under proper instructions by the court, and there is any competent evidence reasonably tending to support the verdict, the Supreme Court will not disturb the same on appeal. Berquist v. Thomas, 86 Okla. 214, 207 Pac. 964; Municipal Excavator Co. v. Walters, 97 Okla. 14, 220 Pac. 456; Shipman v. Conrad, 97 Okla. 216, 223 Pac. 183; Jueschke v. Seeley, 98 Okla. 133, 224 Pac. 341.

Defendant next contends that a new trial should be granted for that the judge who tried the case died prior to the time the motion for a new trial was presented, heard, and passed upon, and his successor, who heard and overruled the motion for a new trial, did not have the evidence in the cause, preserved by bill of exceptions or otherwise, before him at the time the motion for a new trial was argued. Two Oklahoma cases are cited in an effort to sustain this proposition, but neither case is in point, as in Boynton v. Crockett, 12 Okla. 57, 69 Pac. 869, and School District No. 38, LeFlore County, v. School Dist. No. 92, LeFlore County, 42 Okla. 228, 140 Pac. 1144, the successor to the trial judge granted a new trial, and this court held there was no abuse of discretion in so doing.

To hold that a new trial should be granted upon the death or retirement of the judge who tried the case, would result in vexatious delays and cause many unnecessary retrials, as the judges of courts of record in this state are elected for comparatively short terms, and upon the failure of re-election, all cases pending on motion for new trial, wherein the retiring judge was the trial judge, regardless of the merits of the motion, would have to be retried.

In Adams v. Wallace, 94 Okla. 95, 221 Pac. 16, this court said:

"A motion for a new trial duly filed within three days, at the term at which the cause was heard, may be determined by the successor of the district judge."

The court cites with approval 20 R. C. L. 301, as follows:

"As a general proposition, therefore, the successor in office of a trial judge has jurisdiction to pass on a motion for a new trial in a civil case where the motion is not disposed of during the incumbency of his predecessor, or is made in a case tried before his predecessor. This rule applies to cases where the trial judge dies or his term expires before the motion is disposed of."

Is the case under review, there was no conflict in the evidence except as pointed out in this opinion, and the same was preserved by the court reporter and could have been, perhaps was, presented and argued to the court, and is incorporated in the record now before us, and has been read and considered by this court in its entirety, and finding no error in the record, the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1543. (2) 4 C. J. p. 858 § 2836; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (3) 29 Cyc. p. 923; 20 R. C. L. p. 302.