No. 29,464.

CHARLES W. JOHNSON, Receiver of THE MIDWEST STATE BANK, *Appellee,* v. THE FARM AND HOME SAVINGS AND LOAN ASSOCIATION, *Appellant.*

(289 Pac. 396.)

Opinion filed July 5, 1930.

*W. P. Dillard, Harry W. Fisher,* both of Fort Scott, and *A. V. Roberts,* of Wichita, for the appellant.

*Ernest E. Blincoe* and *Harry Warren,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: The action was brought against defendant by the plaintiff as receiver of the Midwest State Bank of Fort Scott. A motion to strike certain allegations from the amended answer of the defendant was sustained, and from the order sustaining the motion to strike the defendant appeals to this court.

The petition alleged, in substance, that the business of the Midwest State Bank, of which plaintiff is the receiver, and the business of the defendant were both conducted in the same room, known as No. 1 Main street, at Fort Scott, prior to the appointment of the plaintiff as receiver; that the plaintiff and defendant corporation had an interlocking directorate; that the directors of both were identically the same except that one person who was a director of the defendant was not a director of the Midwest Bank; that prior to the appointment of plaintiff as receiver of the Midwest Bank it had been engaged in the banking business and the defendant company had been engaged in the business of loaning money on real estate. The petition further alleged that on February 18, 1927, the Midwest Bank was indebted to the defendant in the sum of $20,-217.20, which was the amount of the deposit of defendant in the bank; that on that date the bank was indebted to other depositors in the amount of $186,988.39, and that on that date the bank was hopelessly insolvent; that in order to protect the financial interests of the officers of the bank in the defendant corporation and to further their individual financial interests in the defendant, and to wrongfully prefer defendant as a creditor over other creditors of the bank, the officers of the Midwest Bank wrongfully and fraudulently delivered valuable assets of the bank in the sum of $18,661.81 in satisfaction of the indebtedness due from the bank to the defendant in that amount; that the assets transferred consisted of negotiable notes and other evidences of indebtedness and that the officers of the bank and of the defendant, while acting in their dual capacity and to their own advantage, and knowing of the insolvent condition of the bank, and in the office of trust which they held, in order to protect their individual interests at the expense of the other creditors and in violation of the fiduciary character of the relationship which they occupied toward the stockholders and creditors of the bank, wrongfully and fraudulently delivered the assets of the bank to the defendant for their personal and private advantage; that defendant was engaged in loaning money on real estate and had no authority under the law to deal in negotiable instruments and evidences of indebtedness of the character delivered to it; that plaintiff was informed that defendant had converted all of the negotiable securities delivered to it into cash, and brought this action for the total value thereof, namely, $18,661.81, and interest from February 18, 1927. The petition further alleged that six days

after the transaction complained of the bank was closed by the bank commissioner and plaintiff was placed in charge as receiver.

The defendant filed a third amended answer to the petition, and the court sustained a motion to strike out paragraphs 8 to 16, inclusive, from that answer. In these paragraphs the defendant pleaded by way of set-off a balance of $613.84, which it had on deposit, together with the amount which it alleged it paid to the bank for the negotiable notes, making a total of $19,275.45, which it asked to have set off against the claim of the plaintiff. Defendant further pleaded plaintiff should be estopped to deny validity of the transaction by reason of the fact that the bank had received full value for the notes and mortgages transferred to defendant and that plaintiff had failed to tender to defendant the consideration paid by it or any dividend on that consideration. Further, that plaintiff be estopped because after the transaction and up to the closing of the bank, the bank recognized and honored the checks of defendant on the bank. Defendant pleaded further by way of set-off that when the bank was closed one P. V. Miller and one Fred W. Bayless, acting as agents of the plaintiff receiver, took charge of the property and assets of defendant, locked its vault and assumed full control of its books and records; that these persons refused defendant access to its office, and on account of the wrongful taking possession of its property and assets the public confidence in defendant was injured; that many demands were made on defendant for withdrawal of funds, and the assets were reduced from about $200,000 to $147,000. Defendant alleged it had been damaged by the unlawful acts of plaintiff, his agents and representatives, in withholding its property and assets and in withholding the use of its vault, in the sum of $5,000; and further damaged in the loss of the confidence of its stockholders and depositors in the sum of $15,000. Defendant therefore prayed judgment for the sum of $613.84 due on its balance when the bank was closed; further judgment by way of set-off against plaintiff for $19,275.45, being the amount paid for the assets, plus the $613.84 remaining on deposit when the bank was closed, and an additional judgment offsetting any claim of plaintiff in the sum of $20,000 for damages for the wrongful taking and holding of defendant's property. The foregoing portions of the answer as set out are those which were stricken by the court.

In support of its position the appellee cites R. S. 9-142, which reads:

"No bank, bankers or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security. . . ."

The section does not apply. This section relates to a pledge of assets as collateral security, whereas the transaction set up in the petition is one of sale and transfer of assets in fraud of creditors. The action of plaintiff is grounded upon fraud on the part of the officers of the defendant. It amounts to a cause of action against the defendant based upon the fraud of its officers who, while officers of the bank, had knowledge that the bank was insolvent and thereupon undertook to transfer the assets of the bank to the defendant in order to prefer the defendant and advance their own personal interests in defendant corporation and thereby defraud the other creditors of the bank.

The defendant takes the position that it should be permitted to recover by way of set-off the balance of its deposit to its credit when the bank closed, together with the amount which it paid for the assets taken over from the bank. Is this position correct? To permit this set-off to plaintiff's claim would be to say that plaintiff might come into court and establish the fraud alleged by him and yet go empty handed because of the set-off pleaded by the defendant; that notwithstanding plaintiff should prove that defendant had defrauded the other creditors of the bank, no recovery could be had. Defendant's position, if tenable, would mean that plaintiff could establish a cause of action, but it would avail him nothing—that matters would then be in *statu quo*. This is not sound nor logical. It is not just.

If the transaction complained of by the plaintiff is set aside, then of course it logically follows that the amount paid by the defendant to the Midwest Bank for the assets should be reinstated as a deposit and that the defendant would be entitled to dividends upon the total of its deposit as thus reëstablished, the same as all other creditors of the bank. · The trial court has full power to see that equity is done in such a situation.

The appellant relies upon the general rule which is stated in the note to *Prudential Realty Co. v. Allen,* 25 A. L. R. 938, 241 Mass. 277, 135 N. E. 221, as follows:

"The general rule followed by the great weight of authority is that a depositor in an insolvent bank may set off his deposit therein against a *bona fide* indebtedness of his own to the bank."

The cases set forth in this note are predicated on the basis that the indebtedness of the depositor is *bona fide*. In other words, if a bank at the time it becomes insolvent holds a note of a depositor and the depositor has funds to his credit on deposit, he has a right in answer to a suit upon the note to set off against his liability thereon the amount of his deposit. In this case 'the distinction is that the indebtedness charged by the plaintiff is not a *bona fide* indebtedness, but one incurred through fraud, which is the antithesis of a *bona fide* indebtedness.

The appellant further contends that because the bank continued to honor checks of the defendant after the transaction was had (and this arrangement continued for almost a week) that plaintiff is estopped; that he is further estopped by reason of the fact that after accepting the benefits of the amount paid by defendant for the notes, namely, $18,661.81, the receiver did not give any credit for the amount nor any part thereof. So far as any action of the bank prior to the appointment of the receiver is concerned, there could be no estoppel under the facts charged by the receiver, because if the transaction was one which occurred through the fraud of the officers of both institutions, then the party acting for the creditors should not be estopped by reason of the acts of the parties to the fraud. The receiver should stand ready to pay defendant its proportionate part of all dividends paid to creditors of the bank upon the full amount of its deposits after again crediting the $18,661.81 as a deposit in the event the receiver is successful in obtaining judgment against the defendant in this action. Inasmuch as the trial court can take care of the situation at the proper time and the position of the defendant is not altered for the worse by any failure of the receiver to tender such dividends, there is no estoppel on that point. Of course it would be inequitable to permit the receiver to recover the value of the securities from the defendant and then not allow defendant its proper share of dividends the same as all other creditors upon the total amount of its deposit after restoring and adding thereto the amount which defendant paid for the securities obtained from the defunct bank.

Is there any merit in the cause of action pleaded by way of set-off by the defendant based upon wrongfully taking possession of its property and assets? There is not. The receiver was appointed for the purpose of taking charge of the affairs of the defunct bank. If he overstepped the bounds of his authority and took possession of

other assets and property belonging to a person or corporation other than the bank, then he was outside the scope of his employment and acted without authority. He is not liable in his official capacity, but if liable at all would be liable only in his individual capacity.

In 34 Cyc. 410 the rule is stated as follows:

". . . A receiver is liable only in his individual capacity by reason of transactions outside of or in excess of his authority. As to other property than that in the custody of the court, the management of which is voluntarily assumed and over which the court had no control, he stands in his natural person and responsible for its careful and proper management to all those whose relations to it are such that they may suffer from his neglect of duty, and if he assumes wrongfully to take and hold property not embraced in the order of appointment, or forcibly to take property from a stranger, he is not acting as the officer or representative of the court, but is a mere trespasser, and the rightful owner of the property may sue him in any appropriate form of action for damages or to recover possession of the property illegally taken or detained."

The reason is apparent. The assets so placed in charge of the receiver become a trust fund for the benefit of creditors. If an action based on a tort of the receiver were permitted to be brought against him in his official capacity, then the trust estate might be dissipated by judgments obtained against the receiver. To permit this would be to defeat the ends of receivership, i. e., to secure the preservation of the assets of an insolvent debtor and a ratable distribution thereof to the creditors.

The action of the trial court in striking out paragraphs 8 to 16, inclusive, was proper.

The judgment is affirmed.