No. 29,511.

F. E. BODLEY, *Appellant*, v. M. L. BOWMAN et al., *Appellees*.

(293 Pac. 740.)

Opinion filed December 6, 1930.

*Roscoe W. Graves*, of Emporia, for the appellant.

*Joe Rolston*, of Burlington, and *E. M. Gallaher*, of Tulsa, Okla., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: F. E. Bodley brought this action against M. L. Bowman, Ellen L. Bowman, makers of a promissory note, for $700, and A. J. Harvey, as receiver of the Farmers National Bank of Burlington. The defendants prevailed, and plaintiff appeals.

It appears that the Bowmans executed a promissory note to the Farmers National Bank of Burlington, hereinafter designated the national bank, on April 1, 1924, payable ninety days after date.

On May 5, 1924, the note in question and a number of others, amounting in all to $10,000, were transferred to the Peoples Home State Bank of Chanute, hereinafter called the state bank, of which the plaintiff Bodley was president. J. R. Copple, a brother-in-law of Bodley, was the president and manager of the national bank. The state bank had a deposit with the national bank of $10,000, and that deposit was by agreement applied in payment of the notes mentioned, including the one involved in this action. After the transfer of the notes and on May 10, 1924, the national bank suspended business and passed into the hands of a receiver. At the date of suspension Bowman had on deposit in the national bank $735, an amount more than sufficient to meet the payment of the note. The execution of the note in suit was admitted.

The defendants in their answer alleged, in effect, that the note in suit was transferred to plaintiff when the national bank was insolvent and in a failing condition, a condition known to the officers of the bank when the transfer was made, and for a long time prior thereto; that it was made in contemplation of insolvency and was itself an action of insolvency, done with a view of preventing the application of its assets contrary to the banking laws of the United States, and therefore the transfer was and is utterly null and void. It was alleged that not only the officers of the national bank had knowledge of its insolvent condition, but that plaintiff also had entire knowledge of these conditions. An answer was filed by the receiver disclaiming any interest in the subject matter of the suit and asked that he go hence without costs.

Upon the trial of the case the jury made findings of fact as follows:

"1. Was the Farmers National Bank of Burlington, Kan., insolvent at the time it transferred the note sued on in this action? Yes.

"2. Was the note sued on in this action transferred by the Farmers National Bank of Burlington, Kan., in contemplation of insolvency? Yes.

"3. Was the note sued on in this action transferred by the Farmers National Bank of Burlington, Kan., with a view of preferring one of its creditors to another? Yes.

"4. Was the note sued on in this action transferred by the Farmers National Bank of Burlington, Kan., with a view to prevent the application of its assets ratably among its creditors? Yes."

Upon these findings the court adjudged that plaintiff could take nothing by his action and that defendant recover his costs, and also discharged a certain garnishment proceeding.

Among other complaints plaintiff assigns error· on the overruling of a demurrer to defendants' original answer. After that ruling plaintiff, it appears, filed an amended petition and defendants responded by filing an answer to the later petition, to which plaintiff did not demur but filed a reply. On these later pleadings the case was tried. The filing of the amended pleading, which was not attacked by a demurrer, rendered the ruling on the demurrer to the original pleading immaterial. (*Rly. Co. v. Estes*, 37 Kan. 229, 15 Pac. 157; *King v. Wilson*, 95 Kan. 390, 148 Pac. 752.) However, the question sought to be raised on that demurrer appears to have been brought up for review by the ruling on the demurrer to defendants' evidence, the overruling of plaintiff's motion for a new trial and the entry of judgment for defendants.

The principal question involved in the appeal is whether the act of congress applies to the attempted transfer of the note to plaintiff. He contends that the note was transferred and delivered to him and that under the negotiable instruments act he is entitled to recover the amount thereof. While defendants, on the other hand, insist that the federal law controls and that under it the transfer was utterly void and that plaintiff can claim nothing under it. The act under which defendants claim the transfer is void, reads:

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any state, county or municipal court." (U. S. Rev. Stat. § 5242.)

The provision of the act quoted is paramount to and controlling as to the transfer of notes and other evidence of debt owing to a national bank when it is insolvent or in contemplation of insolvency and with a view of giving preference or of preventing the application of its assets in the manner prescribed in the act. Such a transfer is declared to be utterly null and void. This results, although a different rule or result may be provided by a state statute. A

national bank is an instrumentality of the federal government created to accomplish a public purpose, and with it a code is provided for its conduct and the distribution of its assets in case of failure, and any state statute or decision which would frustrate that purpose or impair the efficiency of these instrumentalities is necessarily void. This rule was announced by the supreme court of the United States in *Davis v. Elmira Sav. Bank*, 161 U. S. 275, 283. It was there said:

"National banks are instrumentalities of the federal government created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties, or control the conduct of their affairs, is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation, or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created."

See, also, *Scott v. Armstrong*, 146 U. S. 499; *National Security Bank v. Butler*, 129 U. S. 223; *Easton v. Iowa*, 188 U. S. 220; *Lamb v. Ulrich, Rec.*, 94 Okla. 240; 3 R. C. L. 656.

A transfer made for the unlawful purposes is void, although the transferee may have no knowledge of the condition of the bank. His knowledge or want of knowledge of the intention or purposes of the bank officers is immaterial. (*Ball v. German Bank*, 187 Fed. 750.) That the transfer was made when the national bank was insolvent, that it was made in contemplation of insolvency and was done with a view of preferring one of its creditors to another or to prevent the application of its assets ratably among its creditors, has been determined by the jury upon what is deemed to be sufficient evidence. It is contended that the defense is not available to the defendants, that the receiver is not asking its enforcement as he might have done, and that defendants are not in a position to invoke the act of congress and the federal rule making the transfer void. Plaintiff could not acquire title to the note by a void transfer. If the transfer was void as against a claim of a receiver, it is equally void when it is sued on by a transferee who by virtue of the act of congress did not acquire title through the transfer. Defendants, as we have seen, had a deposit in the insolvent bank of an amount greater than necessary to satisfy the note, and even if the receiver had brought the action, the defendant would have been entitled to set off his deposit against his indebtedness to the bank. That right

was available to the defendant when sued by the plaintiff. It has been said:

"In other words, if a bank at the time it becomes insolvent holds a note of a depositor and the depositor has funds to his credit on deposit, he has a right in answer to a suit upon the note to set off against his liability thereon the amount of his deposit." (*Johnson v. Farm & Home Savings & Loan Ass'n,* 131 Kan. 238, 242.)

It has been said:

"The general rule followed by the great weight of authority is that a depositor in an insolvent bank may set off his deposit therein against a *bona fide* indebtedness of his own to the bank." (Note in 25 A. L. R. 938.)

In *Scott v. Armstrong,* supra, it was contended that to allow a set-off would in effect be a preference and therefore illegal. The supreme court of the United States met that contention with the statement:

"Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form a part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank." (p. 510.)

The defense made by Bowman is a meritorious one which he can advance in an action brought by one entitled to sue. His indebtedness to the bank on the note was actual and his deposit, it appears, was made in good faith. He had the right, therefore, to set off his deposit against the indebtedness, and when that is done there will still be a surplus above the amount due on the note. Whatever the state of the accounts between the insolvent bank and Bowman may be, it is clear that under the facts found the plaintiff is not entitled to recover upon the note which he acquired in violation of United States Revised Statutes, section 5242.

The judgment is affirmed.