## DETROIT TRUST CO. et al. v. FIRST NAT. BANK–DETROIT et al.

### No. 6058.

District Court, E. D. Michigan, S. D.
May 23, 1934.

Bodman, Longley, Bogle, Middleton & Farley, of Detroit, Mich., for plaintiffs.

Robert S. Marx, of Cincinnati, Ohio, for defendants.

LINDLEY, District Judge.

Matthew Finn, testate of plaintiffs, died June 18, 1932, and plaintiffs sue as executors of his last will and testament. At the time of his death the deceased was indebted to the First National Bank in a substantial sum and the bank held as security for the payment thereof various stocks and bonds. The certificates of stock were assigned in blank and the bonds payable to bearer. After the death of Mr. Finn, the executors continued to collect the dividends upon the stock and interest due on coupons upon the bonds. The total amount of such collections up to February 11, 1933, when the First National closed, was $9,-453.77.

On November 1, 1932, the bank notified the executors that it was claiming the dividends and interest upon the collateral. Prior to that time the coupons had from time to time been turned over by the bank to the executors and collected by the latter, and at no time prior to said date had the bank made any claim to the proceeds of the coupons. The stocks were never transferred on the books of the companies by whom they were issued, and consequently the dividends had at all times come directly to the executors. The collections by the executors prior to November 1, 1932, were as follows: For interest on bonds, $3,733.71; for dividends on stock, $3,-068.50—making a total of $6,802.31.

The executors invested moneys which they claim included said dividends in certificates of

deposit of the bank payable to one of the executors as such in the sum of $29,200. There was due on these certificates of deposit on February 11, 1933, interest in the amount $255.49.

The probate court of Wayne county, Mich., directed that all dividends upon the collateral which might be collected by the executors after February 11, 1933, should be segregated until there was a determination of the ownership thereof by a court of competent jurisdiction, and the executors have since said time collected and segregated the additional sum of $7,555.32. This money rightfully belongs to the receiver.

In addition to the certificates of deposit, the executors had deposited with the First National in the form of fiduciary accounts of Detroit Trust Company an additional credit of $3,112.50.

Since the insolvency of the First National, followed by receivership, the receiver has paid depositors generally 50 per cent. in dividends. On the certificates of deposit of the Finn estate, it has paid 5 per cent., or $1,-450. On the fiduciary account, it has paid 50 per cent. of $3,112.50, less certain reductions which are not material here.

Plaintiffs seek in their bill a decree directing receiver to pay the additional 45 per cent. of the face amount of the certificates of deposit so that plaintiff may be equalized with other creditors, but the receiver denies that plaintiffs are entitled to receive any further dividends and claims that they must account to the bank as trustees for the interest and dividends received on the collateral pledged with the bank on the theory that such income belonged to the pledgee and that the executors hold the same for the benefit of the bank. Consequently, the receiver filed a cross-bill praying for adjudication that this income, collected by the executors, was the property of defendants and that it be surrendered to defendants and they be permitted to set off the same as against dividends now payable or hereafter payable upon the certificates of deposit.

To the cross-bill plaintiffs answered that they are entitled to the income of the collateral collected. They aver that all of the same has been deposited in the First National either in the fiduciary deposit account of the Detroit Trust Company or in the certificates of deposit aforesaid. They claim, therefore, that even if the income should be held to be the property of the bank, there is no liability on their part for any loss, because any loss of funds is attributable to the neglect or insolvency of the bank itself. They deny that the defendants may set off any amount against the dividends.

Quite generally it is held that a pledgee is entitled to the dividends upon pledged assigned stock and to the interest upon pledged bonds. See 7 R. C. L. 293, § 268; Annotation 67 A. L. R. 485; Whetzel v. Forgey, 323 Mo. 681, 20 S.W.(2d) 523, 67 A. L. R. 476; National Bank of Commerce in St. Louis v. Equitable Trust Co. of New York, 227 F. 526 (C. C. A. 8); Meredith Village Sav. Bank v. Marshall, 68 N. H. 417, 44 A. 526. I know of no exception to this rule where there is an express assignment of certificates of stock by the pledgor with the right on the part of the pledgee to cause a transfer of the stock upon the books of the corporation, for the pledgee may cause such transfer to be made and proceed to collect the dividends. It is likewise the general rule that a pledgor who collects dividends upon stock assigned as collateral to a loan holds the same in trust for the pledgee. Fairbank v. Merchants' Nat. Bank, 132 Ill. 120, 22 N. E. 524; Meredith Village Sav. Bank v. Marshall, supra; Jones on Collateral Securities, par. 398, p. 477 and cases there cited.

Quite logically it is generally recognized that upon refusal to surrender such funds, the collecting parties thereby become trustees ex maleficio or trustees de son tort. Thus in 26 R. C. L. 1117, § 28, we find this statement: "The wrongful detention or withholding of possession of personal property from the owner under a claim of title inconsistent with that of the latter, and denying the right of the owner to his property, is unquestionably a conversion of the same for which an action of trover lies, particularly when such detention occurs after demand for possession of the property has been made by the owner. This is true whether the defendant bases his refusal on his own right, or assumes to act for another." To the same effect are Perry on Trusts (3d Ed.); Penn v. Fogler, 182 Ill. 76, 55 N. E. 192; 65 Corpus Juris, 216.

However, it should be observed that there was no express provision with reference to income from collateral in the notes signed by Finn and that the bank made no claims on the executors for the stock dividends until November 1, 1932, and voluntarily permitted the interest coupons held by it to be collected by the executors The bonds being payable to bearer, the coupons might have been collected by the bank and applied upon Finn's indebtedness. Instead of doing so, however, the bank acquiesced in the collection of the

same by the executors. Inasmuch as the executors could not have made said collection without surrendering the coupons, the bank must have voluntarily delivered the same to the executors. Similarly the bank must have acquiesced in the collection of dividends by the executors prior to November 1, 1932. Tested by ordinary rules governing human conduct, it seems inevitable that the bank must be held now to be estopped to claim that it has title to collections made prior to the service of formal notice November 1, 1932, of claim of title to income. Surely with such acquiescence the bank could not thereafter without notice hold the executors as trustees and exact of them the strict and arduous obligations of trustees de son tort. Such result is not equity. Any pledgee may waive his lien by any conduct which is inconsistent with the claim thereof, such as the voluntary relinquishment to the pledgor under circumstances indicating a waiver. See 49 Corpus Juris, 931–933, and cases there cited. No good reason appears why the bank should not be bound by this rule, and it follows that as to the interest and dividends totaling $6,802.21 collected by the executors prior to November 1, 1932, the title of the plaintiffs must prevail.

■ Subsequent to November 1, 1932, no interest on bonds was collected by the executors, but there was collected by the executors between said date and February 11, 1933, additional dividends in the sum of $2,651.56. These collections having been made after service of notice of claim by the bank of its right to have the income from collateral, it follows that for said amount the executors must fully account to the bank. Proper accounting therefor is as follows: The bank owes upon certificates of deposit $29,455.59, upon which plaintiff is entitled to dividends upon the same basis as other creditors, there being deducted obviously the amounts thus far received. The executors owe the bank as trustees ex maleficio $2,651.56. This amount must be paid in full and cannot be set off as against the certificates of deposit. This is because of the strict obligation of such trustees. The liability of executors for moneys and property coming into their hands as trustees of the character aforesaid, after demand by the banks, is not a bona fide indebtedness such as is the subject of offset. Thus in the case of Johnson, Receiver of the Midwest State Bank, v. Farm & Home Savings & Loan Association, 131 Kan. 238, 289 P. 396, 398, 71 A. L. R. 779, the defendant was a substantial depositor in the insolvent bank for which the plaintiff was receiver. Prior to insolvency, defendant, through collusion with certain of the bank's officers, acquired valuable assets consisting of negotiable notes, in payment and satisfaction of the bank's deposit liability. The receiver instituted suit to recover the property thus conveyed. The court said:

"The appellant relies upon the general rule which is stated in the note to Prudential Realty Co. v. Commissioner of Banks, 25 A. L. R. page 938 (241 Mass. 277, 135 N. E. 221) as follows: 'The general rule followed by the great weight of authority is that a depositor in an insolvent bank may set off his deposit therein against a bona fide indebtedness of his own to the bank.'

"The cases set forth in this note are predicated on the basis that the indebtedness of the depositor is bona fide. In other words, if a bank at the time it becomes insolvent holds a note of a depositor and the depositor has funds to his credit on deposit, he has a right, in answer to a suit upon the note, to set off against his liability thereon the amount of his deposit. In this case the distinction is that the indebtedness charged by the plaintiff is not a bona fide indebtedness, but one incurred through fraud which is the antithesis of a bona fide indebtedness." Id., 131 Kan. 238, 289 P. 396, 71 A. L. R. 782.

See, also, French v. Stanton, 1 La. Ann. 8; Colton v. Drover's Perpetual Bldg. & Loan Ass'n, 90 Md. 85, 45 A. 23, 46 L. R. A. 388, 78 Am. St. Rep. 431.

Consequently the executors cannot escape this strict liability by showing that it deposited the trust funds in defendant bank. They must account for the trust funds collected after demand, and these funds must be set off, not against the certificates of deposit, but against the dividends payable thereon.

The court does not believe that any other method of accounting would be in accordance with the principles of equity.

Certain facts and conclusions of law have been adopted by the court, and they are incorporated herein by way of reference.

Proper decree may be submitted.