HORATIO B. SAUNDERS ET AL., APPELLEES, V. STATE SAVINGS & LOAN ASSOCIATION, APPELLANT.

FILED JULY 2, 1931. NO. 27815.

*Frank H. Woodland,* for appellant.

*King & Haggart, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

Goss, C. J.

This suit in equity involves a controversy between borrowing stockholders and a savings and loan association as to whether interest shall continue to run after its stated date of maturity on a note given by the borrowers. From a decree against it, the association appeals.

Horatio B. Saunders and Belle Saunders, his wife, were stockholders in State Savings & Loan Association. No formal or other certificate of stock than their pass book is shown by the evidence, but there is no dispute about the balance thereon May 25, 1929, which is the date of the note given by the borrowers. In its answer the defendant admits that on said date "the plaintiffs were the owners of stock in the defendant association of the face value of $4,592.47, represented by pass book No. 2062." Shares were $100 each. The above value had resulted as a new entry in the pass book as of January 1, 1929, by reason of a 5 per cent. annual dividend credited each six months on the balance six months earlier. On this pass book there had been no deposits for over five years and only one withdrawal, of $100, in that time.

April 9, 1929, Mrs. Saunders, for plaintiffs, wrote defendant they were desirous of withdrawing $2,000, asking how much "interest" they would lose if they took it May 25, and how much if they left it until July 1, 1929. In an undated letter, probably written the next day, the defendant wrote plaintiffs, inclosing a withdrawal notice to sign, explaining that amounts withdrawn between dividend dates do not draw dividends for that period, and that the best way to withdraw money from such an association is to give a 30 day notice on January 1 or July 1. The letter then continued:

"If the need is urgent, and a customer cannot wait until the next dividend paying date, we have what we call stock loans. These loans are made on pass book security. On your account, for instance, if you wished to withdraw $2,000 on May 25th you would send in your pass book as

security. We would send you a note and you would pay, on this amount, to August 1st, $21.66. We would pay you your full dividend July 1st, or $50 on this amount. Your dividend would be credited to your account, in full, July 1st. On August 1st we would charge off $2,021.66 and send you your pass book."

Under date of April 15, 1929, plaintiffs wrote defendant, stating they had to pay $2,000 at Eau Claire, Wisconsin, the first of June. While they might be able to sell some property in Polk, Nebraska, their home town, yet in case they cannot sell, they will have to get the money from defendant; so the letter requests a note be forwarded, dated May 25, 1929, to run until August 1, 1929. The letter, which was written by Mrs. Saunders, further says: "I will * * * just simply send you the note properly signed with my pass book on May 25th and then you send me the money retaining the pass book until the first of Aug. when you send me the book with the proper reduction and also my note."

Also, under same date, April 15, 1929, defendant wrote plaintiff, Mrs. Saunders: "In accordance with your request we are inclosing a stock loan note dated May 25th, and you may return it to us, together with your pass book, so that it will reach us on this date, and we will send you your check for $2,000. Please tell us just where you wish it sent."

On May 23, 1929, Mrs. Saunders wrote defendant, inclosing the pass book and the $2,000 note of plaintiffs, with a request that the money be sent to J. W. Morrill, 426 Summit Ave., Eau Claire, Wisconsin, so as to reach there not later than May 29. The note was for $2,000, dated May 25, 1929, due August 1, 1929, with interest at $10 per month and was signed by the plaintiffs. It contained this collateral assignment: "I hereby assign and transfer to said association my 25 shares of stock, represented by Certificate No. 2062 in said association, as collateral security for the payment of this note. In case of failure

to pay the same at maturity, I authorize said association, or its assigns, to withdraw and pay the amount on this note."

The defendant, on May 25, 1929, wrote Mrs. Saunders they were mailing a $2,000 check to Wisconsin as instructed, and further said: "We will hold your pass book together with your note in our files until further notice from you, or until August 1st—if we do not hear from you."

On May 28, 1929, the defendant's board of directors, on the recommendation of an examiner of the department of trade and commerce, ceased to accept deposits and, on May 31, placed the association in the hands of the department for liquidation. Comp. St. 1929, sec. 8-319. The evidence shows it was insolvent. On June 5, 1929, the stockholders determined upon voluntary liquidation under the statute and the association has ever since been in the hands of the board of directors as liquidating agents. Comp. St. 1929, sec. 8-323.

Payment on the $2,000 check had been stopped, but later either that check was paid or a new check for that amount was issued and paid. After August 1, 1929, plaintiffs demanded a return of the note and pass book, but it was refused. On August 20, 1929, defendant wrote the plaintiffs the reason for not returning the pass book was that the association was in process of liquidation and the board of directors had not yet given authority to charge the note against the account. Such authority was not given and this suit was begun March 22, 1930.

At the time of the introduction of the note in evidence at the trial, November 21, 1930, defendant had credited on the note three liquidation payments, attributable to the interests of plaintiffs in the association as shown by the pass book. These payments as to amounts, dates and application, are as follows: First payment, total $459.24, applied to pay interest to September 26, 1929, $40.33, to principal $418.91; second payment, $229.62, applied to pay

interest to January 15, 1930, $29.19, to principal $200.43; third payment, $459.24, applied to pay interest to June 20, 1930, $35.65, to principal $423.59. These liquidation payments or dividends represent a total of 25 per cent. There was evidence to the effect that, depending on the real estate market remaining as it is now for the next four or five years, voluntary liquidation may result in total payments of 80 per cent. of their principal to the stockholders.

Plaintiffs in their petition allege the facts substantially as we have stated them, plead that the defendant continues to charge interest on the note from its maturity, whereas, under the contract, as they interpret it, the note should have been charged off as paid on August 1, 1929, as an item of $2,021.66 against the total of the $4,592.47, leaving $2,570.81 on which liquidation payments should be and should have been computed and forthwith paid to plaintiffs instead of being applied on the note. They prayed for an accounting and for such a decree.

The defendant states in its brief: "There is no issue as to the facts in this case. The controversy grows out of the proper interpretation of the facts as well as the questions of law involved." In its view the plaintiffs chose the option to borrow on the security of their stock rather than to give the legal withdrawal notice; and that the defendant has, in the circumstances, no right to charge the indebtedness against the stock, but was required, under the law, to demand payment of the note, and, in default thereof, to apply the liquidating payments on the note, without abatement of interest until the note is fully paid.

The district court ordered that the note should not bear interest after August 1, 1929; that it should be held by defendant at $2,021.66, with plaintiffs' total stock at its face value of $4,592.47, until the total dividends calculated upon the latter sum should pay the note; that then the canceled note, together with the plaintiffs' pass book, should be returned to them, and any remaining dividends

should be the property of the plaintiffs and should be paid to them. This order was based upon the finding by the court that, at the time of going into voluntary liquidation, defendant was under a valid contract to use on August 1 so much of said stock as was necessary to discharge said note, and, by undertaking such liquidation, has postponed the payment of it but has not acquired any right to additional interest on the note.

The plaintiffs have cross-appealed, assigning that the district court erred in allowing defendant to hold the note until application of liquidating payments or dividends discharged it as it stood as of August 1, 1929, and in not ordering all liquidating payments on the $2,570.81 balance to be paid to plaintiffs. Defendant appealed because the court failed to enter judgment on its cross-petition for the amount due on the note.

The situation is new in this jurisdiction. The cause must be decided upon general principles relating to the dealings between the parties and to their rights and duties to other shareholders in the association. For that reason we have stated the facts rather fully.

The basic and essential principle of a savings and loan association is mutuality. 9 C. J. 921, and cases cited from many jurisdictions. *Anselme v. American Savings & Loan Ass'n*, 63 Neb. 525, and cases cited. We are aware that this opinion was superseded on rehearing (66 Neb. 520), but the inherent value of this particular rule, and of the cases cited on this point, remains. Members, whether borrowers or nonborrowers, have a mutual interest in its affairs, and, sharing alike in its earnings, must share alike in its losses. *Eversmann v. Schmitt*, 53 Ohio St. 174. It being the duty of each member to bear his share of losses, "therefore the borrowing member is not entitled to set off all that he has paid against the loan or advancement which he has received." *Knutson v. Northwestern Loan & Building Ass'n*, 67 Minn. 201. Upon insolvency "nothing remains but to wind it up in such manner as to

do equity to creditors and between the members themselves. A borrowing stockholder, in settling with an insolvent building association, should be required to repay what he actually received, with interest. He will then be entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the nonborrowing stockholder for what he has paid upon his stock." *Strohen v. Franklin Saving Fund & Loan Ass'n,* 115 Pa. St. 273.

Analyzing the facts with the principles of law in mind, it seems clear that, when the parties had their correspondence in April and May, 1929, both were considering the association as if it would still be a going concern in August of that year. The information conveyed to plaintiffs by the association, in the letter of April 10, heretofore quoted, announced the conventional procedure to be followed if the stockholder desired to withdraw money and also the procedure to be followed if the stockholder desired to borrow money so as to avoid the entire loss of dividends for the period between January and July. The correspondence amounted rather to the statement of a practice than to the making of a contract. The association, or its officer or employee, could not guarantee in April that it would be a going concern in August. The plaintiffs were charged with notice of the law and knew or should have known that, whether they adopted the withdrawal method or the borrowing method, the final adjustment depended upon the association being a going concern, in the one instance, when their 30 day withdrawal notice matured, and in the other, when their note as borrowers matured. They waited from April until, as events proved, it would have been too late to give notice and to withdraw the desired portion of their money, and then adopted the other plan and borrowed it. We are of the opinion that no contract was made by the correspondence, or otherwise, binding the association to offset an equal amount of plaintiffs' stock against the note if the association should be insolvent and under statutory liquidation

when the note matured. When that event occurred, the association then had not the power of a going concern to follow the conventional method of permitting these borrowing stockholders to pay their note by an equal portion of the face value of their shares; and the duty of the liquidators to all stockholders, borrowers and nonborrowers alike, prevented them from doing so.

The borrowers secured $2,000 from the association. They agreed in their note to repay it with interest. The unfortunate insolvency of the association and its liquidation intervened to prevent the entire payment of the note out of their shares in the usual way so as to do away with further interest on the note. But the law prevents the cancelation of the interest without actual payment of the principal. The trial court was in error in ordering its cancelation and in refusing to enter a judgment in favor of the association for the balance due it as prayed for in the defendant's cross-petition. The trial court did not err in refusing to grant the prayer of the plaintiffs' petition assigned as error in their cross-appeal.

For the reasons stated, the judgment of the district court is reversed, with directions to take a further accounting, if necessary, to show additional liquidation dividends or payments on plaintiffs' shares, and to enter a judgment for defendant against plaintiffs for the unpaid balance on the note, if any, with interest; and to provide that any further dividends on their shares held as collateral to the note may be applied on such judgment until it is thus or otherwise paid.

REVERSED.