FOX *v.* DEPARTMENT OF FINANCIAL INSTITUTIONS ET AL.

[No. 26,715.   Filed March 19, 1937.   Rehearing
denied May 17, 1937.]

*Walter R. Arnold,* for appellant.

*Albert T. Franz,* and *Jones, Obenchain & Butler,* for appellees.

HUGHES, J.—This was an action instituted by the appellant against the Union Trust Company of South Bend, Indiana, then in voluntary liquidation, because of its refusal to apply certain deposit credits of appellant to a mortgage indebtedness, which appellant owed to the Trust Company under a mortgage made to it and for which appellant had previously asserted a demand. Subsequent to the filing of the complaint, the Department of Financial Institutions, having taken charge of the affairs of the Union Trust Company, became a party defendant. The complaint was in two paragraphs and the appellees, other than the Union Trust Company, were made parties on the theory that they claimed an interest in the subject-matter of the liquidation. At the trial, however, there was no contention that they had any interest and the trial court found and adjudged that they did not have any interest. The first paragraph of the complaint asserted that the appellant had a right to set-off against the mortgage indebtedness, by reason of the fact that between April 1, 1933, and June 20, 1933, certain depositors of the Trust Company sold and assigned their deposit credits to the appellant and that the appellant is entitled to set off the amount of these deposits, together with interest, as against said mortgage indebtedness. That such set-off was refused to be made by the Trust Company and the appellant brought this action to have said deposit liabilities set off as against said mortgage indebtedness and the release of said mortgage.

The second paragraph alleged the same facts as set

out in the first paragraph except the prayer of the complaint was for a declaration of the rights and duties of the various parties to the action. It appears from the complaint that within a short time after the suit was filed, the Department of Financial Institutions, pursuant to the Acts of 1933 (Acts 1933, pp. 195-198), took control of the property and affairs of the Union Trust Company and by its attorneys, substituted appearance of the defendant, and thereafter took charge of the litigation in behalf of the Union Trust Company. A demurrer was filed by the Department of Financial Institutions to each paragraph of the complaint, on the theory that no right of set-off existed at the time the appellants acquired the deposit credits and that at the time of the tender, the Trust Company was no longer engaged in the conduct of a trust and banking business as a going concern. That to permit a set-off would, in effect, result in an illegal preference. The demurrer was sustained to appellant's first paragraph and the appellant refusing to plead further as to that paragraph, judgment was rendered against the appellant and in favor of the defendant on the first paragraph. The demurrer to the second paragraph was overruled, for the reason that appellant was entitled to have a declaration of his rights. The appellee filed answer to the second paragraph of appellant's complaint, based on the theory that appellee's rights of set-off terminated not later than the commencement of the voluntary liquidation of the Trust Company. The cause was submitted to the court for trial, and a finding was made for the appellee and against appellant. The errors relied upon for reversal are as follows:

1. The trial court erred in sustaining appellee's demurrer to the first paragraph of appellant's complaint.

2. The trial court erred in its judgment upon the pleadings, holding against the appellant and for the appellee, Union Trust Company of South Bend, Indiana,

and Department of Financial Institutions, liquidating said Trust Company.

3. The trial court erred in overruling appellant's motion for a new trial. The reason assigned in the motion for a new trial is that the decision of the court is contrary to law.

It was the finding and judgment of the lower court that the appellant's rights as to the assigned accounts or deposits were limited to the right to participate in liquidated dividends pro rata with general creditors of the Union Trust Company.

The facts show that the Trust Company ceased to pay deposits on June 4, 1931, and voluntary liquidation began on July 17, 1931, and on July 24, 1933, the Department of Financial Institutions took possession of the Trust Company's assets. It is true that up to July 24, 1933, the liquidation was voluntary and involuntary after July 24, 1933, but during all of this time, the liquidation was going on and the Trust Company was not a going concern. The assets were being managed and handled presumably for the equal benefit of all the creditors and upon the theory that no one creditor should be given an advantage or preference over any other creditor.

We think it can be stated as a general principal of law that when a bank or trust company suspends operations as a going concern and is placed in involuntary liquidation, the rights of creditors attach and all creditors are then placed upon an equitable basis and no one is entitled to a preference over another. We can see no reason for a distinction being made as to creditors, whether the liquidation is voluntary or involuntary. In either case, the assets of the institution are in the custody of the law for the purpose of being adjusted and settled for the benefit of the creditors upon an equitable basis. This was the evident purpose of the voluntary liquidation statute, the same

as an involuntary liquidation. The assets are held in trust by the liquidating agents, for the benefit of the depositors and other creditors and disposed of in such manner that no one shall have an advantage over another.

In the instant case, it is seen that the deposits, on account of which the appellant demands a set-off as against his mortgage indebtedness, were assigned to the appellant between April 1, 1933, and June 20, 1933, or about two years after the voluntary liquidation began and suit was not begun until June 30, 1933, about one month before the institution was placed in the Department of Financial Institutions. Conceding that the Trust Company was insolvent when it went into voluntary liquidation on July 17, 1931, there is no claim on the part of appellant that the institution was solvent when about two years later he secured the assignments of the deposits and tendered them as a set-off, nor at the time suit was filed, or at the time judgment was rendered.

It must be remembered that in the instant case, it is not one where an individual is owing the bank and has a deposit which he is offering as a set-off, but it is a case where the appellant, long after the Trust Company went into voluntary liquidation, and within a very short time before it went into involuntary liquidation, bought from other depositors, their deposits and then offered these as a set-off against the mortgage indebtedness owing the Trust Company by the appellant. In the first instance, there was no preference created and no violation of the rule as to equality among creditors, for the reason that it is only the balance after the set-off is deducted which can be justly held to form a part of the assets of the institution. But here we have a case where the appellant had no deposit of his own but went out upon the market and purchased deposits

for the specific purpose of using them as a set-off against his indebtedness. If this can be done, then the ones selling the deposits, under an arrangement with the one who owes the bank, could recover the value of their deposits in full, while other creditors could not and thus a clear preference would be made. *Scott* v. *Armstrong* (1922), 146 U. S. 499, 13 S. Ct. Rep. 148; *Miles* v. *Bossert* (1930), 92 Ind. App. 10, 173 N. E. 656. It was decided in the case of *Miles* v. *Bossert, supra,* that a depositor in an insolvent bank may set off his deposit against an indebtedness of his own against the bank and that such a set-off does not create a preference or violate the rule concerning equality among creditors, for the reason that it is only the balance, if any, after the set-off is deducted, which forms a part of the assets of the estate.

In the case of *Wolcott, Receiver.* v. *Piere* (1934), 100 Ind. App. 16, 23, 188 N. E. 596, it is said:

"Upon his appointment as receiver for the bank, appellant took the assets of the bank, which included its deposits, subject to all the existing equities and rights of the creditors of the bank. He also was charged with the duties of preserving the assets and making fair distribution to all of the creditors. At the moment that a receiver is appointed and takes charge as such, the status of debtors and creditors of the bank becomes fixed, and the rights of creditors of the bank intervene; and no consents to the use of, or assignments of, bank deposits from one to another can be recognized after a receiver has been appointed and the rights of creditors of the bank have attached, so as to allow a depositor either with the consent of his joint depositor, or by assignment, to create a credit in his own right in order to set the same off against his individual debt to the bank."

In the case of *Peters et al.* v. *First National Bank of New London* (1935), 218 Wis. 126, 259 N. W. 600, the plaintiff sued to recover a judgment against the defendant, First National Bank, for the recovery of the

amount of certificate of deposit. The defendant admitted that due demand for the payment of the certificate had been made and that it had not been paid. The defendant by answer, alleged that its stockholders had adopted a resolution of dissolution and that it was thereby barred from paying any depositor, including the plaintiff, any sums except such as were their share of a ratable distribution of the proceeds of liquidation under such dissolution. Disposing of the case, the court said (p. 128):

"The action of stockholders in appointing a liquidating agent pursuant to the powers conferred upon them by sections 181, 182 of title 12 USCA, sections 5220, 5221, Rev. St. U. S., is treated by the courts as equivalent to and carrying all of the incidents in respect to the assets and the rights of creditors as the making of a voluntary deed of assignment would do; and it would be impossible to comply with those statutes and effectuate their equitable purpose if creditors were permitted to secure priorities or liens by attachment or recovering judgments constituting liens upon the property.

"Immediately upon going into such liquidation, the assets of the bank become a trust fund for the payment of its debts *pro rata,* and no liens can be created thereafter either by the bank or by the rendition of judgments; but valid liens which existed at the time such liquidation went into effect, or because a court has by injunction or otherwise assumed control of the property, will be preserved."

In the case of *Southwest National Bank et al* v. *Farracy et al.* (1931), 50 Fed. (2d) 959, in passing upon questions involved in the voluntary liquidation of a bank, the court said (p. 961):

"The entire body of assets drawn together in the liquidation remains responsive to the charge of every creditor, and the liability of the shareholders is an added bulwark. The courts treat voluntary liquidation as a form of assignment, not in the sense that the institution is insolvent, always, or unable to meet its obligations, but in the sense that

> such a course saves all that is available in law, for creditors, and presents a satisfactory method for the distribution of the balance among the shareholders. Such a course would be thwarted if creditors were permitted to secure priorities or liens, or if they could dissipate by execution sales."

And it may also be added that if certain creditors could obtain advantages over other creditors, as is attempted to be done in the instant case, then the purpose of act providing for a voluntary liquidation of an institution, which is to effect an equitable and economical distribution of its assets among its creditors, would be thwarted.

In the case of a voluntary liquidation of a bank or trust company, as in the case of an involuntary liquidation, the assets are held in trust and conserved so that each depositor and creditor shall receive payment or dividends according to the amount of his debt and so that none of an equal class shall receive any advantage or preference over another. And, moreover, one should not be permitted to create a credit in his own right during the liquidation in order to set the same off against his individual debt to the bank. Can it be doubted that if in the instant case the set-off of the appellant were allowed against his mortgage indebtedness, he would be receiving an advantage over other creditors in the same class? He would undoubtedly receive an advantage and and inequitable one, and one which the law did not contemplate in providing for a voluntary liquidation. In the case of *Peters et al.* v. *First National Bank of London, supra,* the court was dealing with a case which amounted to a voluntary liquidation of a bank and among other things, the court said (p. 128) :

> "Immediately upon going into such liquidation, the assets of the bank become a trust fund for the payment of its debts *pro rata,* and no liens can be created thereafter either by the bank or by the ren-

dition of judgments; but valid liens which existed at the time such liquidation went into effect, or because a court has by injunction or otherwise assumed control of the property, will be preserved."

So in the instant case when the Union Trust Company went into voluntary liquidation, its assets became a trust fund for the payment of its creditors and depositors pro rata. Those who at that time were the owners of deposits in said institution, and at the same time were debtors thereof, could off-set the deposits as against the indebtedness. This would create no preference, for as heretofore said, it is only the balance after the set-off is deducted which can be justly held to form a part of the assets of the institution. In the instant case, the record clearly shows that if the set-off were allowed, there would be a manifest injustice and a preference allowed to one creditor. This, the law will not permit. The law pronounced in the case of *Rohr* v. *Stanton* (1926), 76 Mont. 248, 245 Pac. 947, is specially applicable here. It was said (p. 252):

"So, too, voluntary liquidation of a bank is authorized by our statute. In such cases, insolvency is not a prerequisite. Nevertheless its assets are to be carefully collected and held in trust for the benefit of depositors. Voluntary liquidation is intrusted to the stockholders of a bank under the supervision of the superintendent of banks, and the latter is given power to examine into its affairs at any time to determine whether the rights of creditors and depositors are being protected. If it is found by the superintendent of banks that the bank is not conducting its liquidation properly, or that the interests of its depositors and creditors are not being properly protected, he is authorized to forthwith take possession of its property and business, and force it to involuntary liquidation. The purpose of the act is to effect an equitable and economical distribution of the assets of such bank among its creditors, and for this purpose all of its assets are as effectually placed in the hands of the law for purposes of liquidation as though a receiver were appointed.

The end to be accomplished is the same. The available assets of such a bank are held in trust, and so conserved that each depositor or other creditor shall receive payment or dividend according to the amount of his debt, and that none of equal class shall receive any advantage or preference over another."

So, in this state voluntary liquidation of a trust company is authorized by our statute and insolvency is not a prerequisite. Prior to the Act of 1933, voluntary liquidation was intrusted to the stockholders but subject to the examination of the financial institution by a bank examiner under the supervision of the bank commissioner. Sections 3964 and 3965 Burns 1926. If said institution was found to be insolvent or in failing condition, then the bank commissioner took charge and made application for the appointment of a receiver.

Undoubtedly the purpose of the act providing for a voluntary liquidation, as stated in the case of *Rohr* v. *Stanton, supra,* "is to effect an equitable and economical distribution of the assets of such bank among its creditors, and for this purpose all of its assets are as effectually placed in the hands of the law for purposes of liquidation, as though a receiver were appointed. The end to be accomplished is the same." This being the purpose of the act, it can not be effectuated if one creditor is to be permitted after the bank is closed and voluntarily liquidating, to purchase deposits and then off-set them against his indebtedness, to the disadvantage and injury of other creditors. Such a practice would open the door to the perpetration of fraud upon the other creditors and permits certain creditors to enter into a collusion with debtors of the bank, whereby they would receive their deposits in full, or at least not in pro rata with others.

We are of the opinion that after the trust company went into voluntary liquidation, the deposits acquired by

appellant could not be used as set-offs against his mortgage indebtedness and that the lower court was correct in holding that these accounts are limited to the right to participate in liquidated dividends pro rata with general creditors of the Union Trust Company.

The appellant contends that paragraph 2 of Sec. 7, Ch. 5, Acts of 1935, p. 14, fixes the rights and liabilities of the financial institutions and of its creditors, depositors and all persons interested as of the date of the filing of the notice of liquidation and that the statute applies to past transactions and therefore applies to the transaction here involved. We can not agree with this construction. Said paragraph is as follows:

> "The rights and liabilities of any such financial institution and of its creditors, depositors, shareholders and/or all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date of the filing of the notice of liquidation of such financial institution in the office of the clerk of the circuit, superior or probate court of the county where such financial institution had its principal office, as hereinabove provided. In the case of mutual debts or mutual credits between such financial institution and another person, such credits and debts shall be set off and the balance only shall be allowed or paid. Such right to set off shall be determined as of the date of the filing of the notice of liquidation of such financial institution as herein provided."

The last sentence in said paragraph seems the controlling one here, and, even though applicable to past transactions, it could not avail the appellant in the instant case. The sentence is: "In the case of mutual debts or mutual credits between such financial institution and another person, such credits and debts shall be set off and the balance only shall be allowed or paid. Such right to set off shall be determined as of the date

of the filing of the notice of liquidation of such financial institution as herein provided."

The assigned deposits to the appellants can not be considered as mutual debts or credits between the appellant and the trust company. The above quoted sentence from Section 7 is specifically limited to mutual debts and credits between a financial institution and another person and assigned deposits were not mutual credits at the time of the voluntary liquidation. Moreover, the right is given the court, under said Section 7, to fix some other time than the date of the filing of the notice of liquidation to determine the rights and liabilities of the financial institution and of its creditors, depositors and other persons interested, if it concludes that such time would not be proper in order to fix and determine the equitable rights and obligations of the respective parties. So, under said section, the rights and liabilities of the parties are not definitely fixed as of the date of filing the notice of liquidation, except in the case of mutual debts or credits, the right of a set-off is limited to the date of filing of the notice of liquidation. This is strongly persuasive of the fact that another time may be fixed to determine the rights and liabilities of creditors, debtors and other persons interested, who do not have mutual debts or credits, than the time of filing of the notice of liquidation.

We are of the opinion that the judgment of the lower court is correct.

Judgment affirmed.