## Wetmore Case.

Argued March 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Robert L. Wallace,* with him *Wylie McCaslin,* for appellant.

*Robert White,* with him *J. Glenn Berry,* of *Cobau & Berry,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 24, 1943:

This was a proceeding under the Act of June 11, 1879, P. L. 141, as amended by the Act of May 13, 1931, P. L. 123, to compel the satisfaction of a building and loan association mortgage.

Charles I. Wetmore and Elsie M. Wetmore, husband and wife, became borrowing shareholders of Peoples Mutual Building and Loan Association on August 22, 1927. On that date they were granted a loan by the association in the sum of $4,500. and gave as security their bond and mortgage on premises owned by them in New Castle, Lawrence County. At the same time they assigned 22½ shares of stock in the association "as collateral security for the payment of said principal debt and interest thereon, the monthly dues, fines, premiums of insurance, or arrearages of any kind that may

become chargeable to said Charles I. Wetmore and Elsie M. Wetmore, his wife, under the Constitution and By-Laws of said Association." Monthly payments of $45. were made to the association and credited in the pass-book and the association's individual ledger, $22.50 to dues and $22.50 to interest, until August, 1937, when the payments were increased to $50, made up of $27.50 dues and $22.50 interest.

On August 20, 1938, Charles I. Wetmore inquired of the secretary of the association why the loan "hadn't been paid out" and was advised that "the reason it hadn't been paid out was because they had gone through a period of depression and there wasn't enough, wasn't as much earnings in the organization as they thought there would be, that they had lost some property, and for that reason it had run a little bit longer." He then requested "a statement of how much I owed them, the balance on it," and was furnished a statement, on a printed withdrawal form, indicating $3,748.25 as the withdrawal value of the shares and a balance of $751.75 plus a satisfaction fee of $.25 if paid on or before September 17, 1938. The Wetmores made no request to withdraw or cancel their shares, but continued to make monthly payments as before, until appointment of liquidators for the association on June 5, 1939. On receiving notice of liquidation Charles I. Wetmore "went down immediately and asked them, told them I wanted to pay the balance on it before getting out, before liquidation; they said they wouldn't take it . . ." The Wetmores were never in default and the total of the payments made by them to the association exceeds the face amount of the mortgage plus interest.

On September 11, 1941, more than two years after insolvency, the Wetmores filed this petition under the Act of 1879, asking the court to compel satisfaction of their mortgage. They contended that under the language of the bond demanded and received from them by the association it was obligated to regard all pay-

ments on the stock as payments in reduction of the loan, with the result that the indebtedness has been paid in full, or, in the alternative, that irrespective of the terms of the bond they had the right to compel the association to apply the value of their shares as payment on account of the loan, and that the request of Charles I. Wetmore for a statement and its issuance by the association implied an exercise of such right which was not affected by the association's later insolvency. After hearing on the petition and answer, the trial judge entered a decree nisi as follows: ". . . due proof having been made that the full amount for which the mortgage in suit was given has been paid, it is ordered, adjudged and decreed that the mortgage . . . shall be satisfied of record and the bond given therewith and any judgment entered thereon be cancelled and marked satisfied . . ." Exceptions filed by the liquidating trustees were dismissed, after argument, and a final decree was entered in favor of the Wetmores. This appeal by the liquidating trustees was then taken.

In *York Trust, Real Estate & Deposit Co.* v. *Gallatin,* 186 Pa. 150, relied upon by appellees and the court below, this Court, after referring to several older cases, said (p. 158): "These and other cases that might be cited distinctly recognize the right of the debtor to direct appropriation of the payments on the stock to the extinguishment of the debt. His power to so direct before the intervention of the rights of creditors cannot be doubted. It is only where the rights of creditors attach, by assignment . . . or by legal process or insolvency . . . that the debtor's right of appropriation is forfeited. Until thus forfeited, his right remains . . . Bearing in mind these principles, in which all the cases substantially agree, it clearly follows that where the appropriation is made at the inception of the contract of loan, it cannot thereafter be successfully questioned." This was contrary to the basic doctrines on which building and loan associations are organized. It wholly lost

sight of the dual relationship of the borrowing member towards the association—that of borrower and shareholder—and effected a most anomalous result whereby, despite the status of an association as a mutual enterprise, certain members, by the simple expedient of an appropriation, became entitled to share in the profits without incurring the risk of losses. See Sundheim, Building and Loan Associations (3rd ed.), section 137; 1 Segal, Pennsylvania Banking and Building & Loan Law, page 580. The error of this decision was later admitted and its application limited to cases presenting exactly similar statements of fact. Thus, in *Freemansburg B. & L. Assn.* v. *Watts,* 199 Pa. 221, it was said, referring to the *York Trust* case (p. 229) : "That case stands on its own facts, and is not one to be reasoned from." And, in *Kurtz* v. *Campbell,* 218 Pa. 524, the Court, confronted with the same facts, held as follows: "This case is clearly within the rule of York Trust, Real Estate & Deposit Co. v. Gallatin, 186 Pa. 150. The majority of the court are of opinion that on principle that case was erroneously decided, but as it has stood in the books for nine years, and many contracts have been made in reliance on it, the principle of stare decisis should prevail . . ." See also *Consolidated B. & L. Assn.* v. *Shipley,* 95 Pa. Superior Ct. 232, 235; *Crawford* v. *New Spartan B. & L. Assn.,* 112 Pa. Superior Ct. 113, 116.

Here the facts are not the same as in the *York Trust* case. There the language of the bond was that "all moneys paid or hereafter paid by me into the association on the stock . . . shall be taken and considered as payments on and in liquidation of this bond"; in the present case, that "if at any time default be made for the space of six months in the payment of monthly dues, interest, or fines for the nonpayment thereof, then, and in such case, the credit given on such principal sum shall cease and determine . . ." The court below conceded this language is "ambiguous" and may have been

intended to mean simply "that any allocation of payments by the officers of the association shall be liable to be divested" in case of a default, but held it should be construed to mean "that payments as made shall be credited on the mortgage" and that "the language of the bond regarding appropriation, as thus interpreted, is decisive: York Trust, etc. Co. v. Gallatin, 186 Pa. 150." This was error. As said in *Freemansburg B. & L. Assn.* v. *Watts*, supra, 228-29: "Frequently, the obligations taken by building associations from borrowing members very imperfectly express the true relation of the parties to each other, as determined by the object in view and the rules for the government of the association, *but they should never be considered as establishing a new relation at variance with the fundamental principles on which such associations are organized and conducted, unless the language used will admit of no other construction.*" See also *Leechburg B. & L. Assn.* v. *Kinter*, 233 Pa. 354; Sundheim, Building and Loan Associations, supra, section 173.

Even if the facts of the present case were the same as those of the *York Trust* case, appellees would not be entitled to prevail. While recognizing the right of appropriation, our recent decisions on the subject indicate its exercise will not be permitted in such a way as to enable borrowing members to obtain a preference over non-borrowing members in the event of a future insolvency. In *Sullivan & Sons Mfg. Co.* v. *Ideal B. & L. Assn.*, 313 Pa. 407, we said (pp. 410, 413): "Despite our repeated rulings that [a borrowing shareholder] has that right [to require an appropriation], we would now modify or reverse those decisions, if, by applying them, the other members of the association would be seriously injured, as appellant fears they would . . . The appropriation would not in any way alter the requirements of payment as specified in the bond and mortgage or other obligation given by plaintiff to defendant; *nor would it, in the case of a later insolvency,*

*excuse plaintiff from sharing pro rata in the losses which occurred during the time of his membership* . . . The real benefit to both the parties rests on the fact that settlement could at any time be effected between them, unhampered by the claims of outside creditors." Again, in *Williams* v. *Wenger,* 319 Pa. 73, in rejecting the contention of a borrowing shareholder that "there was no restriction on her right to appropriate the value of her stock to payment of her loan, and her withdrawal notice should be treated as a request for such appropriation, which right was not affected by subsequent insolvency of the association", we said (p. 79) : "In view of the later insolvency of the association, she will not be allowed to take advantage of any preference obtained through an appropriation on the books of the association to the serious detriment of the remaining members." See also *Crawford* v. *New Spartan B. & L. Assn.,* supra, 117.[*]

The decree of the court below is reversed and the record is remitted with instructions that the petition be dismissed. Costs to be paid by appellees.

---

[*] The effect of these decisions is codified by the Building and Loan Code of May 5, 1933, P. L. 457. Section 906 permits the reduction and extension of a mortgage loan by application of the withdrawal value, provided other shares having an aggregate par value of no less than the reduced amount of the loan are substituted for the shares so applied. Section 907 allows the dues to be credited on account of the principal of the mortgage loan, provided the borrower participates neither in profits nor losses. Section 911 gives the borrower the right to compel the association to credit the withdrawal value of his shares against the principal of the loan, provided the balance of the loan is repaid or withdrawal value equals or exceeds the total amount of the debt.