No. 47,549

Kansas Credit Union League, Receiver for First Credit Union of Parsons, *Appellant,* v. Ruby M. Redmond, *Appellee,* and Wiley M. Robinson, *Defendant.*

(532 P. 2d 1039)

Opinion filed March 1, 1975.

*Don W. Riley,* of Wichita, argued the cause and was on the brief for the appellant.

*Charles Menghini,* of Menghini & Menghini, of Pittsburg, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This action was commenced by the receiver of an insolvent credit union to recover a judgment for money loaned by the credit union to a shareholder. The primary question on appeal is whether the shareholder of an insolvent credit union may set off the cost of her shares in the credit union against an indebtedness she owed to the credit union at the time it was declared insolvent. The trial court permitted the cost of shares to be set off. The receiver of the insolvent credit union appeals.

By way of background, the appellee Ruby M. Redmond had borrowed money from the First Credit Union of Parsons. Her husband, an employee of the credit union, did not join his wife in borrowing the money or in signing the credit agreements. In the winter of 1969-1970, Mrs. Redmond attended hearings by the State Depart-

ment of Credit Unions relative to receivership proceedings involving the First Credit Union of Parsons. Her indebtedness with the union in December, 1969, was $11,000.00 and her credit agreement at that time was co-signed by one Ruby Van Hoose. The $11,000.00 credit agreement was credited with a $5,000.00 principal payment and a new credit agreement was executed as of December 22, 1969, in the amount of $6,200.00. This latter credit agreement was co-signed by Ruby M. Redmond and Wiley May Robinson, the aunt of Mrs. Redmond. Mrs. Robinson had a share balance on the books of the company of $6,735.36. Mrs. Redmond held a share balance on the books of the company of $5.00. The actual value of the shares is much less than book value and could be of no value.

Under the terms of the credit agreement the co-signers, Ruby M. Redmond and Wiley M. Robinson, pledged all the paid shares which they held in the First Credit Union of Parsons as security for the loan. The credit agreement provided that said pledge was given to secure the payment of all money loaned to the co-signers. The co-signers authorized the credit union to apply the pledged shares to the payment of said loans and interest. This credit agreement and pledge was dated December 22, 1969. On January 5, 1970, the Kansas Credit Union League qualified as receiver of the insolvent First Credit Union of Parsons and was granted letters of receivership.

Redmond and Robinson thereafter refused to make payments on their indebtedness and on April 11, 1973, Wiley May Robinson formally requested that her cost of shares be set off against any amount remaining due on the loan. The receiver refused to allow the requested setoff on the ground that it would constitute an unlawful preference. The receiver brought this action to recover the entire balance due on the loan. The defendant Redmond answered saying the share balance of Wiley M. Robinson should be set off against the indebtedness and this would wipe out the indebtedness.

A motion for summary judgment by plaintiff was denied. The case was tried to the court and judgment was entered in favor of defendant, Ruby M. Redmond, decreeing that the shares owned by Wiley M. Robinson be set off against the indebtedness of Ruby M. Redmond, and any excess over and above the indebtedness be turned over to the plaintiff receiver. We assume from the wording of the journal entry that the amount in dollars considered available for setoff was the original share balance of $6,735.36 as carried

on the books of the insolvent credit union. The record does not disclose what actual value, if any, might remain of the original share balance after the expenses of receivership and outstanding liabilities are paid. The trial court specifically held that the allowance of the setoff would not constitute a preference but no further explanation was given.

Neither party to this appeal cites a case in which the right of setoff has been decided with regard to an insolvent credit union. The appellee Redmond relies on cases involving insolvent banks. The appellant receiver relies on cases involving insolvent savings and loan associations.

In *Bodley v. Bowman,* 131 Kan. 741, 293 Pac. 740, this court holds:

"A customer of a bank which becomes insolvent and which holds his note, and in which the customer has a deposit, may, when sued upon the note, set off his deposit against the note or against any *bona fide* indebtedness of his own to the bank." (Syl. ¶ 5.)

(See also *Johnson v. Farm & Home Savings & Loan Ass'n,* 131 Kan. 238, 242, 289 Pac. 396, 71 A. L. R. 779.)

These Kansas cases appear to recognize and apply the general rule followed by a majority of jurisdictions to the effect that a depositor in an insolvent bank may set off his deposit therein against an indebtedness to the bank. (*Farish v. Hawk,* 241 Ala. 352, 2 So. 2d 407; *Fox v. Dept. of Financial Institutions et al,* 212 Ind. 85, 7 N. E. 2d 39; *Hammond Pure Ice & Coal Co. v. Heitman,* 221 Ind. 352, 47 N. E. 2d 309, 145 A. L. R. 997; *Fischer, Aplnt., v. Commercial Nat. Bank.,* 321 Pa. 200, 184 A. 57; 9 C. J. S., Banks and Banking, § 437, p. 868.)

One of the accepted reasons for allowing setoffs against insolvent banks arises by reason of the limitation on the rights, title and powers imposed on the receivers of insolvent banks. It is said a receiver takes only such title to the bank's assets as the bank itself had and subject to all equities which existed against the assets in the hands of the bank. The receiver takes charge of the banking affairs where the bank left them, and he takes over its assets with its concomitant burdens. He can set up no right against claims which the bank could not have maintained. The receiver of an insolvent bank is merely an assignee, so that choses in action pass to him subject to any right of setoff existing at the time of his appointment. (3 Michie, Banks and Banking, 1974, § 96, pp. 246-249, and § 119, p. 284.)

The allowance of the setoff of a bank deposit against an indebtedness to the bank has been justified and declared nonpreferential following the rationale expressed in *Scott v. Armstrong*, 146 U. S. 499, 36 L. Ed. 1059, 13 S. Ct. 148, as follows:

". . . Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends, is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank." (146 U. S. p. 510.)

(Further discussion of setoffs against insolvent banks appears in the following annotations: Anno.—Deposit in Insolvent Bank—Set-off, 25 A. L. R. 938; Anno.—Deposit in Insolvent Bank—Set off, 82 A. L. R. 665.)

A different rule applies in Kansas with reference to savings and loan associations. A depositor as a shareholder may not set off shares held in an insolvent savings and loan association against debts the depositor owes to the association. In *Scaife v. Savings Association.*, 71 Kan. 402, 80 Pac. 957, this court holds:

"A borrowing stockholder in a building and loan association that has become insolvent is not entitled to receive credit on his indebtedness to the association for the amounts paid in the purchase of stock, called dues." (Syl. ¶ 3.)

As a general rule, although there is authority to the contrary, when a savings and loan association is insolvent a borrower who holds shares in the association may not set off deposits or shares against the amount of his loan. *Bank Commissioner v. Loan Association*, 126 Me. 59, 136 A. 284, 50 A. L. R. 526; *Saunders v. State Savings & Loan Ass'n.*, 121 Neb. 473, 237 N. W. 572; *Wetmore Case*, 347 Pa. 398, 32 A. 2d 221, 12 C. J. S., Building and Loan Associations, § 85, p. 504.)

The theory which supports the foregoing rule is that the borrowing stockholder occupies a dual relationship to the association. As a stockholder he is a member of the association, entitled to share in the profits and liable for his share of the losses and expenses in the same manner as a nonborrowing member. Under this view credits and debits relating solely to the borrower's rights and liabilities as a stockholder, such as dividends and withdrawal value of stock, are not set off against the amount of indebtedness owed but are left until final settlement with all members—borrowers as well as nonborrowers. The rule is based on the principle that

borrowing and nonborrowing members should be treated equally and that the fund remaining in the association after payment of prior liabilities should be distributed to all stockholders on a pro rata basis. (12 C. J. S., Building and Loan Associations, *supra;* Anno.—Building and Loan Associations—Settlement, 98 A. L. R. 6, § III, p. 10.)

(Further discussion of the relationship between shareholders and insolvent savings and loan associations is found in the annotation, Anno.—Building and Loan Associations—Insolvency, 50 A. L. R. 533.)

It is argued by the appellant receiver that credit unions are similar in nature and purpose to building and loan associations and because of the similarities in ownership of shares, shareholders in credit unions and in savings and loan associations should be treated the same. The receiver contends that borrowing shareholders should not be allowed to set off the book value of their shares against indebtedness owed the insolvent institution. It is argued that by disallowing setoffs borrowing and nonborrowing credit union members will be treated equally and any assets remaining in the insolvent credit union will be distributed to all members of the credit union on a pro rata basis after the payment of other liabilities. It is further pointed out that if a borrowing member is granted the right to set off the cost of his shares against indebtedness owed the insolvent credit union the members would not share equally in losses. The borrowing member would receive full book value for his shares as against his indebtedness and the nonborrowing member would share only in the assets remaining after payment of liabilities. A preference in such case would be enjoyed by the borrowing members of a credit union at the expense of nonborrowing members. There is much to be said in favor of this argument.

However, we are of the opinion that the answer to our question is found in our Kansas statutes regulating credit unions. K. S. A. 17-2201 *et seq.,* (Weeks 1974) sets forth a comprehensive legislative plan governing the organization, operation and liquidation of credit unions. The legislature has outlined in these statutes a procedure for the liquidation of credit unions which sets forth the order in which the assets of an insolvent credit union are to be marshalled.

K. S. A. 17-2230 (c) (Weeks 1974) provides:

"The board of directors, or the receiver shall use the assets of the credit

union to pay: *First,* expenses incidental to liquidation including any surety bond that may be required; *second,* remaining liabilities other than shareholdings; and *third,* the assets then remaining, if any, shall be distributed to the savings held by each member as of the date dissolution was voted."

The legislature has spoken quite clearly on this subject. In liquidating an insolvent credit union the expenses incidental to liquidation are to be paid first. The remaining liabilities *other than shareholdings* are to be paid second. Then the assets remaining, if any, are to be distributed on the basis of the savings held by each member *as of the date dissolution was voted.* Such a plan of distribution does not permit shareholdings to be offset against indebtedness. There can be no offsets under the plain terms of the foregoing statute.

Other provisions of the statute indicate an intention by the legislature to delay distribution to shareholders of an insolvent credit union until final distribution. In case of insolvency K. S. A. 17-2230 (*b*) (Weeks 1974) requires that all claims of shareholders and creditors be filed with the receiver within one year of the date of appointment. Any claim of a shareholder based on shares held in the credit union not so filed shall be barred from participating in the assets of the credit union upon final distribution. This would seem to prevent offsetting the cost of shares held against the amount of shareholder loans.

Accordingly a shareholder of an insolvent credit union may not offset the cost of the shares held in the credit union against indebtedness the shareholder owes to the credit union at the time it is declared insolvent.

The appellee Redmond further contends that the statute which authorizes withdrawal from membership requires that shares in the credit union be set off in payment of any loan when a shareholder withdraws from membership. K. S. A. 17-2219 (Weeks 1974) provides:

". . . All amounts paid on shares of an expelled or withdrawing member, with any dividends credited to his shares to the date of expulsion, or withdrawal, shall be paid to said member, but only as funds therefor become available, and after deducting any amounts due to the credit union by said member. All shares of an expelled or withdrawing member, with any interest accrued, shall be paid to such member, subject to sixty days' notice, and after deducting any amounts due to the credit union by said member. . . ."

Appellee Redmond argues that since written notice of assignment of shares and withdrawal from membership was executed on April 11, 1973, the credit union was obligated to apply all amounts

paid on shares to reduce the amount due the credit union on indebtedness as contemplated by the foregoing statute.

In the present case insolvency was declared and the receiver was qualified on January 5, 1970. The present action was filed by the receiver on March 7, 1973. The attempt to withdraw from membership was not made until April 11, 1973. The statute relied on by appellee relates to expulsion from membership on vote of the members and to voluntary withdrawal from membership. The provisions of this statute contemplate a viable organization and the continued existence of the credit union.

In *Bank Commissioner v. Loan Association,* supra, a similar statute was considered by the Maine court. The Maine statute authorized a borrower in a building and loan association to repay his loan at any time, and upon repayment he was entitled to credit for the withdrawal value of shares pledged and transferred as security for the loan. The Maine court said:

"This section is applicable only when the association is a going, solvent concern, for it is thoroughly settled by the authorities that when insolvency ensues the contract between the borrower and the association is abrogated. *People's Building and Loan Asso. v. McPhilamy,* 81 Miss 61; 32 South, 1001; 95 Am. St. Rep. 454; 4 R. C. L. 387, 9 C. J. 991, and cases there cited.

"Statutes and rules conferring the right of withdrawals are not applicable after the association becomes insolvent, and a member then has no right to withdraw or perfect an incompleted withdrawal. In *New Jersey Bldg. Loan & Inv. Co. v. McNulty,* 71 At., 493, the court says that 'these provisions as to the right to withdraw, and the terms upon which such withdrawals are to take place, are dependent upon the association being a going concern. They cannot apply during insolvency. Insolvency at once abrogates such provisions of the contract between the association and the shareholders.' See also *Groover v. Pac. Coast Sav. Soc.* 164 Cal. 67; 127 P. 495; Ann. Cas. 1914 B. 1261; *Chapman v. Young,* 65 Ill. A, 131, where this rule is fully discussed." (126 Me. p. 63.)

This reasoning has received general acceptance. We are of the opinion the same reasoning applies to the similar statutory provision in Kansas relating to credit unions. The provisions of K. S. A. 17-2219 (Weeks 1974), conferring rights and imposing requirements on a member of a credit union who desires to withdraw from membership in the union, are not effective or applicable after the credit union becomes insolvent.

The judgment of the trial court in favor of Ruby M. Redmond is reversed and the case is remanded to trial court with directions to proceed in accordance with the views expressed in this opinion.