**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Allen R. MILLER, Defendant.**

**Civ. A. No. 83–2479–O.**

United States District Court, D. Kansas.

March 5, 1987.

Michael C. Manning and Marc E. Elkins, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., and Christopher A. Byrne, Office of General Counsel, Federal Deposit Ins. Corp., Washington, D.C., for plaintiff.

Leonard Rose, Ryder, Rose, Frensley & Shapiro, Kansas City, Mo., Jo Ann Butaud and Richard C. Wallace, Evans, Mullinix & Jarczyk, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter arises out of the failure of Indian Springs State Bank ["ISSB"] and the subsequent appointment of the Federal Deposit Insurance Corporation ["FDIC"] as receiver for the bank. Pending before the court is the FDIC's motion for summary judgment. For the following reasons, we shall grant the motion.

Before turning to the FDIC's motion, we emphasize the following legal principles: The movant is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No factual dispute is "genuine" unless "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212 (1986). Furthermore, the standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* 477 U.S. at ——, 106 S.Ct at 2511, 91 L.Ed.2d at 213. In addition, summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Finally, in making these determinations, the court must view the record in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

FACTS

The following facts are undisputed. On July 27, 1982, defendant Allen R. Miller executed a promissory note payable to ISSB in the amount of $100,000.00. The note, which was payable on demand or, if no demand, on July 27, 1983, indicates on its face that interest accrues at the rate of 18.25% per annum. Defendant has paid $75,000.00 of the principal owing, plus the interest that had accrued as of March 9, 1983. Thus, a principal balance of $25,-

000.00 exists on the note, plus interest after March 9, 1983.

Defendant, in his answer, asserts the right to a setoff on the basis of a letter of credit, of which he was a beneficiary, that was issued by ISSB on May 13, 1983. ISSB refused to honor the letter of credit on August 31, 1983. It now asserts that the documents presented to it were not the documents required by the terms of the letter.

On January 27, 1984, the Kansas State Bank Commissioner determined that ISSB was insolvent. The bank commissioner ordered ISSB closed and the FDIC accepted appointment as receiver of the bank. Under Kansas law, the FDIC, as receiver of ISSB, is the owner and holder of all ISSB assets, including the note in controversy here.

## ANALYSIS

■ Although defendant Miller did not address the issue in his response to the instant motion, he apparently argues that he is not liable on the note because of an oral side agreement allegedly made by William LeMaster, former President of ISSB. According to Miller, LeMaster promised him that his note would be "rolled over" on two successive years and would not become due on the date indicated on the face of the note.

We have discussed identical assertions in several related cases. In each of those cases we held that the defendants were barred from asserting the alleged oral promises and from raising other defenses by the D'Oench doctrine, first enunciated by the Supreme Court in D'Oench, Duhme and Company, Inc. v. F.D.I.C., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). See, e.g., Federal Deposit Insurance Corporation v. Berr, 643 F.Supp. 357 (D.Kan.1986); Federal Deposit Insurance Corporation v. Chessen, No. 83–2476–0 (D.Kan., unpublished, Oct. 2, 1986). [Available on WESTLAW, 1986 WL 15638]. Under the D'Oench doctrine, the maker of a note may not plead various defenses against the FDIC, if in executing the note he lent himself to a scheme that would tend to mislead the banking authorities. D'Oench, Duhme,

315 U.S. at 458–60, 62 S.Ct. at 679–81. Berr, 643 F.Supp. at 361.

Here, Miller, as did the defendants in Berr and Chessen, is attempting to enforce an alleged side agreement that contradicts the written terms of his note. As the FDIC correctly asserts, by signing a note with a secret understanding that it would not become due on the date indicated on the face of the note, Miller lent himself to a deceptive scheme; a scheme that would tend to deceive the banking authorities as to the value of the note. Hence, the D'Oench doctrine bars Miller from asserting the alleged secret agreement, and he is liable for the balance due on the note, plus interest.

Miller argues, however, that the amount he owes on the note should be offset by the amount he alleges ISSB owes him on a letter of credit. We disagree.

In support of its position that Miller is not entitled to setoff, the FDIC argues, among other things: (1) that setoff is an equitable remedy that is unavailable to Miller because he has unclean hands; (2) that ISSB properly dishonored the letter of credit; and (3) that allowing setoff would be contrary to K.S.A. 9–1906 (Supp.1986), which governs the distribution of the assets of an insolvent bank, and would give Miller's claim a preference over the claims of similarly situated creditors of ISSB. Because we agree that setoff would violate the policy expressed in section 9–1906, we need not discuss the FDIC's other arguments.

Section 9–1906 provides:

(b) In distributing assets of an insolvent bank ... in payment of its liabilities, the order of payment, in the event its assets are insufficient to pay in full all of its liabilities, shall be by category as follows:

(1) The costs and expenses of the receivership;

(2) claims which are secured or given priority by applicable law;

(3) claims of unsecured depositors;

(4) all other claims exclusive of claims on capital notes and debentures;

(5) claims on capital notes and debentures.

Should the assets be insufficient for the payment in full of all claims within a category, such claims shall be paid in the order provided by other applicable law or, in the absence of such applicable law, pro rata.

█ Allowing Miller to set off his alleged claim would violate the policy of section 9–1906(b) and would give Miller a preference. If he had not been subject to the FDIC's claim on the note, his claim on the letter of credit would simply be an unsecured claim against the assets of ISSB. Under section 9–1906(b), he would, thus, be entitled to share in the distribution of those assets only after payment of both the expenses of the receivership and the claims of all secured creditors and unsecured depositors. Because, as a practical matter, the assets of an insolvent bank are not sufficient to pay all of the bank's outstanding liabilities, unsecured claims such as Miller's rarely are paid in full, if at all. (In fact, secured claims may not be fully paid.) But, as the FDIC notes, if Miller is allowed to set off his claim against the amount owing on the note, his claim will be fully satisfied. Such a result would clearly violate the order of distribution established by section 9–1906(b) and would treat Miller's unsecured claim more favorably than the claims of other creditors, perhaps even more favorably than secured claims.

Moreover, the Kansas Supreme Court has addressed—and resolved—this issue in an analogous context. In *Kansas Credit Union League v. Redmond*, 216 Kan. 451, 532 P.2d 1039 (1975), a shareholder of an insolvent credit union sought to set off the book value of her shares in the credit union against a debt she owed to the credit union at the time it was declared insolvent. The court, in deciding against the shareholder, stated:

> [T]he answer to our question is found in our Kansas statutes regulating credit unions. K.S.A. 17–2201 *et seq.*, (Weeks 1974) sets forth a comprehensive legislative plan governing the organization, operation and liquidation of credit unions.

The legislature has outlined in these statutes a procedure for the liquidation of credit unions *which sets forth the order in which the assets of an insolvent credit union are to be marshalled.*

*Id.* at 455, 532 P.2d at 1042 (emphasis added). The court concluded that, because the statute set forth an order of distribution (under which shareholders are paid last), "[s]uch a plan of distribution does not permit shareholdings to be offset against indebtedness. There can be no offsets under the plain terms of the foregoing statute." *Id.* at 456, 532 P.2d at 1042. Finally, to buttress its conclusion, the court also noted that another provision of the statute, which requires all claims of shareholders and creditors to be filed within one year of the receiver's appointment, "indicate[s] an intention by the legislature to delay distribution to shareholders of an insolvent credit union until final distribution." *Id.*

Section 9–1906(b), discussed above, provides a very similar scheme for distribution of the assets of insolvent banks. As is true of the statute governing the liquidation of insolvent credit unions, section 9–1906(b) sets forth the order in which the various claims against the bank are to be paid and further provides that the assets of the insolvent bank are to be applied first to pay the expenses of the receivership. Moreover, section 9–1909 of the banking code, also like its counterpart in the statute governing credit unions, requires claims of all creditors to be filed within one year of the receiver's appointment.

Although Miller does not raise the point, one might note that the court in *Redmond* expressly stated that depositors of an insolvent bank *may* set off a bank deposit against a debt owed to the bank. *Id.* at 453–54, 532 P.2d at 1040–41 (citing *Bodley v. Bowman*, 131 Kan. 741, 293 P. 740 (1930)). But in doing so, the court held that a different rule applies in cases involving credit unions *precisely because* the legislature had adopted a statute regulating the order of distribution of an insolvent credit union's assets. At that time, because section 9–1906(b) had not yet been enacted by the legislature, no similar legis-

lative scheme applied in banking cases. Since its enactment in 1985, however, section 9–1906(b) provides such a scheme. Accordingly, we conclude that, if presented with the question today, the Kansas Supreme Court would hold that, under the plain terms of the statute, claims against an insolvent bank may not be set off against the claimant's debts. Miller's attempt to offset his alleged claim shall, thus, be denied.

IT IS THEREFORE ORDERED that plaintiff Federal Deposit and Insurance Corporation's motion for summary judgment against defendant Allen R. Miller is granted. Counsel for plaintiff is directed to prepare and to circulate a journal entry of judgment within ten (10) days from the date of this order.

IT IS FURTHER ORDERED that defendant Miller's alleged claim arising from a letter of credit of which he is a beneficiary, shall not be set off against his indebtedness to plaintiff.